The STATE of Ohio, Appellant,

v.

KING, Appellee.

[Cite as *State v. King* (1999), 136 Ohio App.3d 377.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76373.

Decided Dec. 13, 1999.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Jose Torres,* Assistant Prosecuting Attorney, for appellant.

*Wesley A. Dumas, Sr.,* for appellee.

JAMES D. SWEENEY, Judge.

An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.App.R. 11.1. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision. *Crawford v. Eastland Shopping Mall Assn.* (1983), 11 Ohio App.3d 158, 11 OBR 240, 463 N.E.2d 655; App.R. 11.1(E).

Plaintiff-appellant state of Ohio appeals from the trial court's order granting defendant-appellee John C. King's pretrial motion to suppress evidence recovered during the execution of a search warrant on an apartment. The basis of the motion was that the police executing the search warrant failed to "knock and announce" their identity prior to forcibly prying open the rear entry door to the upstairs unit of the house located at 8018 Bellevue Avenue, Cleveland, Ohio, at approximately 6:37 p.m. on October 3, 1998. For the reasons adduced below, we affirm.

At the motion hearing the prosecution offered the testimony of Cleveland Police Department Vice Unit Detective Darryl Johnson. This witness was involved in obtaining and executing the search warrant at issue. The warrant was obtained after the police received complaints of drug trafficking activity taking place at the apartment. Subsequent surveillance supported the suspicion of drug sales on the premises. Further, a controlled purchase by a confidential informant confirmed a sale of drugs by the defendant to the informant. The search warrant was obtained and executed by the police. The witness was one of four officers who were assigned to the rear steel entry door.[1] No civilians were observed in the rear area of the home as the witness approached the home. The

---

1. The rear steel entry door was directly behind a door constructed of steel bars.

witness testified that they repeatedly pounded on the rear door and announced that they were police, but no response was forthcoming from the occupants. After less than a minute following several knocks on the door, these officers then used a pry bar to open the steel door while continuing to yell, "police." The officers breached the steel door and ran up the stairs yelling "police" on the way upstairs. The officers found the defendant, a young lady, and the lady's four-year-old child in the apartment. The officer stated that he was concerned that the defendant-suspect was armed because a prior search of the home in 1996 had found the suspect with a loaded handgun in the home.[2] The defendant admitted to the police to having drugs in his bedroom and the police recovered a quantity of crack cocaine (approximately fifty grams of crack cocaine powder and a few rocks of crack cocaine) on his bedroom dresser.[3]

The defense offered the testimony of three witnesses in support of the motion to suppress. The first defense witness was Miss Ann Washington, who lives in the downstairs apartment of the house next door to the searched home. She has lived at that location for over twenty years. She is retired from administrative employment at The Cleveland Clinic, but performs private duty nursing to supplement her income in retirement. The witness was alerted by her sister-in-law to the presence of police shortly before the execution of the warrant. The witness ran to her front door and observed police coming through her yard on their way to the suspect's house so she went to her back door, opened it, and looked out to find some police standing along her fence as other police officers proceeded up to the suspect's rear door. She heard no knocking or announcements by the police as they approached the rear door or as they walked up the rear steps of the suspect's home after gaining access to the rear entryway. She testified that she heard nothing because when she ran to her back door and looked out her rear door the police were already going up the steps into the suspect's home. She did see the police open the door and did not know how the police got inside the rear door of the suspect's home. The witness stated that because she observed from her rear door the officers going up the rear steps of her neighbors house does not mean that they did not announce themselves; she

---

2.  This concern, and the fact of a prior search in which a firearm was found, did not appear in the affidavit supporting the search warrant.

3.  The search warrant inventory reflects that in addition to the fifty grams of suspected crack cocaine, the officers also recovered: a 20–gauge shotgun under appellant's bed; a plastic container under the appellant's bed containing marijuana (amount not stated); in or on top of appellant's dresser marijuana and marijuana cigarettes (amount not stated); small green plastic bags in the bathroom closet (amount not stated); $19 in currency on top of appellant's dresser; a wallet with identification in appellant's bedroom; and a scale in a drawer of a kitchen cabinet.

was not at her rear door when the police gained entry into the suspect's home and she heard no announcements.

The second witness for the defense was Donald Smith, a college-educated retiree of the United States Marine Corps after twenty-one years of service, with a final rank of Master Sergeant.[4] The witness is the godfather to the defendant's children. Shortly before the time the search warrant was executed, the witness was arriving at the defendant's home to take his godchildren to dinner. As he opened the front yard gate on his way toward the rear entrance, the witness observed police starting to come onto the premises. The witness walked onto the side of the front porch by the driveway as the police ran onto the premises toward the rear. The witness then walked from the front porch down the premises driveway to a vantage point about fifteen to twenty feet from the rear of the house, by the fence running along the driveway separating the two homes, to see what was going on in the rear yard area. He could see most of the back yard area, but could not see the area of the rear door. He could hear sounds from the back yard area. As the police went to the rear yard area, the witness heard a door open, then a breaking of a door and running up the stairs. He heard no knocks and no announcements by the police prior to the door and running noises. When he heard the loud sound of the door being broken, the witness turned and left the area.

The defendant-appellant testified as the third defense witness. The witness, a Vietnam veteran who served in the United States Navy between 1968 to 1970, admitted to having drug law convictions in 1987, 1989, and 1997. At the time of the execution of the warrant, he was in his upstairs apartment in a bedroom, when he heard a loud banging noise from the area of the upstairs kitchen door which was at the top of the stairs leading from the rear outside entry door. He heard no knocking, no doorbell ringing, and no announcements prior to the door being broken. As he left the bedroom to see what caused the commotion, he was met by police officers inside his home. He cooperated with the officers' instructions and told them there were drugs in the house. The rear entry door is a hollow steel door. The witness testified that if anyone had knocked or rang the bell at the rear entry door he would have heard it upstairs. He did not hear the rear outside entry door being pried open. The witness stated that he did not own any guns, but that the police did find a shotgun under the witness's bed during the search of the apartment. He stated that the shotgun belonged to his brother who died eleven months prior to the search, that it was not loaded and had not

4. Of the nine enlisted rank levels, E–1 through E–9, a Master Sergeant is E–8, one level below the highest enlisted level.

been touched since his brother had placed it there, and that he (the defendant) had forgotten that the firearm was there.

At that point the hearing ended. The court granted the motion to suppress without elucidation or findings of fact, orally or otherwise, on the record. See order of April 26, 1999 and the transcript of the motion hearing.

■ This court recognizes that Crim.R. 12(E) mandates that a trial court "state its essential findings on the record" when "factual issues are involved in determining a motion, * * *" However, the trial court's failure to provide its "essential findings" on the record in this case is not fatal to a review of the trial court's motion ruling at this time because "the record provides an appellate court with a sufficient basis to review appellant's assignment of error * * *" See *Parma v. Reschke* (Feb. 14, 1991), Cuyahoga App. No. 58015, unreported, 1991 WL 19151, at 2, citing *State v. Almalik* (1987), 41 Ohio App.3d 101, 534 N.E.2d 898, and *Geraci v. Maddalena* (Oct. 25, 1984), Cuyahoga App. No. 47964, unreported, 1984 WL 5271. From the underlying record it is clear that the granting of the motion to suppress was based on the failure of the police to abide by the "knock and announce" rule prior to entering the premises. We will now turn our attention to the merits of this appeal.

The lone assignment of error presented by appellant states:

"The trial court erred in granting appellee's motion to suppress against the manifest weight of the evidence."

The scope of our review on a motion to suppress was set forth by this court in *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174:

"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."

The "knock and announce" rule is codified in R.C. 2935.12(A), which provides for forcible entry in executing a search warrant:

"(A) * * * when executing a search warrant, * * * the law enforcement officer, * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the search warrant * * * he is refused admittance, but the law enforce-

ment officer * * * executing a search warrant shall not enter a house or building not described in the warrant."

■ In the case *sub judice*, there is sufficient competent and credible evidence upon which the trial court, after judging the credibility of the evidence, could conclude that the police did not knock and announce their presence prior to entering the appellant's home. However, our analysis does not end there. The intrusion by the police may still be reasonable within the confines of the Fourth Amendment to the United States Constitution under a "no knock" entry of appellee's home.

The United States Supreme Court recently addressed the application of the "knock and announce" rule with regard to the "reasonableness" standard for searches under the Fourth Amendment. See *Richards v. Wisconsin* (1997), 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615. In *Richards*, the court determined that in felony drug investigations a "no knock" entry, wherein the police are justified in dispensing with the "knock and announce" requirement, may be done where the police have, "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing destruction of evidence." 520 U.S. at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624.

*Richards* further stated that whenever the reasonableness of a no-knock entry is challenged, this "reasonable suspicion" showing by the police is not a high one and that the reasonableness of the officers' decision must be evaluated "as of the time they entered the" dwelling. 520 U.S. at 394–395, 117 S.Ct. at 1422, 137 L.Ed.2d at 624–625.

■ In the circumstances accompanying the execution of the search warrant at issue, there is no showing that the police had a reasonable suspicion that the appellee was armed at that time. The fact that appellee had a firearm in his possession during the execution of a search warrant in 1996 (approximately two years prior to the search *sub judice* ) bears little, if any, connection to whether the appellee might be armed during the execution of the search warrant in October of 1998. There was no indication by pre-search surveillance or through the use of the police informant that the appellee, in particular, may be armed. This presumed specific safety fear by the police of the appellee being armed appeared nowhere in the affidavit supporting the search warrant. It is true that the affidavit accompanying the search warrant contained a boiler plate averment that "[i]n the experience of affiant, persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their persons, or within their possession, for use against law enforcement officials, as well as other citizens."

However, this general averment relating to the possession of firearms by persons involved in selling illegal substances would swallow up the "knock and announce" rule and create a *per se* exception in drug investigations, rendering the reasonableness requirement of the Fourth Amendment meaningless. It is this preclusion of *per se* exceptions which *Richards* condemned in announcing its "reasonable suspicion" standard in the application of "no-knock" entries.

The evidence also indicates that there was no indication that the appellee was alerted to the presence of the police prior to the execution of the warrant, which tends to further negate the safety fears of the police and the accompanying fear that evidence might be destroyed as a result of the police "cover" being blown prematurely.

Based on the evidence in the record, we cannot conclude that the trial court abused its discretion in determining that the officers lacked a reasonable suspicion regarding officers' safety or preservation of evidence. Accordingly, this assignment is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

TIMOTHY E. McMONAGLE, P.J., concurs.

MICHAEL J. CORRIGAN, J., dissents.

MICHAEL J. CORRIGAN, Judge, dissenting.

I respectfully disagree with the majority and would reverse the trial court on its granting of the defendant-appellee's motion to suppress.

I agree that the basis of this motion was the execution of a duly obtained search warrant with an alleged violation of the "knock and announce" requirement as set forth in R.C. 2935.12(A), which provides for forcible entry in executing a search warrant:

"When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."

The recitation of the evidence by the majority, such as it is, is not disputed, but the evaluation of the defense evidence and its application is disputed. The

majority fails to mention that the state presented witnesses who testified to the fact that the "knock and announce" requirement was strictly adhered to in the execution of the search warrant of the defendant-appellee's premises.

Detective Darryl Johnson testified that he obtained the search warrant and in company with three other officers was assigned to the rear steel door of the residence which was the point of entry. There was no evidence to indicate to Detective Johnson or his companions that any civilians were in that area of entry or adjacent thereto. The detective clearly stated that the police repeatedly pounded on the rear door and concomitantly announced that they were the police. There was no response from within. The police ultimately used a pry bar to gain entrance and continued announcing that they were the "police." This was the *only competent, credible evidence* presented on the issue before the trial court. Although not called as witnesses, the three other officers corroborated the testimony of Detective Johnson by their silence and clearly were available had there been any effort to impeach or contradict the undisputed testimony of the state.

The defense presented a series of witnesses, including the defendant. In construing their testimony in the most favorable light for the defendant-appellee and accepting it as true, one must nonetheless deduce that none of the witnesses heard or saw the actions of the police. The trial court apparently concluded, therefore, that there was no knock and no announcement. In order to reach the conclusion reached by the trial court, one would have to extrapolate that because the combined witnesses did not hear the knocking or see the actions of the police that they—the police—neither knocked nor announced. This "logical" deduction flies in the face of common sense and reason. The trial court's evaluation of the evidence was analogous to the oft debated query: "If a tree falls in the forest and no one is there, does it nonetheless make a sound?"

The defendant-appellee argued, in essence, that his evidence did not fully conform to the evidence presented by the state and, therefore, the police violated R.C. 2935.12. This reasoning is convoluted and unsupported by any evidence that in any way, shape, or form contradicts or calls into question the testimony of Detective Johnson.

The law is clear that the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. It is axiomatic, however, that findings must be based upon competent, credible evidence. It must thereafter be determined independently where, as matter of law, the facts meet the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908. In the case *sub judice* there are no findings of facts.

Crim.R. 12(E) at paragraph three mandates that the trial court issue findings "where factual issues are involved in determining a motion, the court *shall* state its essential findings on the record." (Emphasis added.) Crim.R.12(E). Absent the required findings a reviewing court is unable to independently determine whether or not the facts meet the appropriate legal standard. *State v. Brown* (1992), 64 Ohio St.3d 476, 597 N.E.2d 97. The language of the rule indicates that the findings of fact are mandatory when the resolution of factual issues is necessary to determine the motion. *State v. Edwards* (1993), 86 Ohio App.3d 550, 554, 621 N.E.2d 606, 608–609; *State v. Gibson* (July 7, 1999), Lorain App. No. 97CA006967, unreported, 1999 WL 459330.

The majority excuses the trial court's failure to comply with the dictates of Crim.R. 12(E) by stating in a conclusory fashion that the record provides a sufficient basis to review the trial court's factual determinations. To the contrary, there is no way that this court can determine the basis of the trial court's ruling from the record.

The only competent, credible evidence presented on the issue before the trial court is the testimony presented by the state. The only evidence concerning the police activity at the point of entry is the state's. The defense evidence relative to "knock and announce" was non-existent at the suppression hearing and, therefore, not germane to the issue before the court. At best, one would have to base an inference upon an inference and then speculate that not hearing or seeing something means that it did not occur. At the outset, it is impermissible to base an inference upon an inference, but that defect aside, there is *no* evidence to dispute the state's position that the police properly "knocked and announced" prior to the execution of the search warrant. Accepting the unrebuked, uncontradicted, unimpeached, unrefuted testimony of the police, I would reverse the trial court's granting of the defendant-appellee's motion to suppress and remand the defendant to stand trial.[5]

---

[5]. I fail to see the relevance of the majority's analysis of whether the police execution of the search warrant in this case constituted a permissible "no knock" entry of defendant-appellee's home. The state never attempted to qualify the search under this exception at the suppression hearing and Detective Johnson did not testify that he had a reasonable suspicion that, under the particular circumstances, knocking would be dangerous or futile, or that it would inhibit the effectiveness of the crime. In my opinion, the fact that the state did not argue that the entry in this case was permissible under the rule announced by the United State's Supreme Court in *Richards v. Wisconsin* (1997), 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 bolsters the credibility of the witnesses who testified that the police did, in fact, knock and announce their presence prior to entering the defendant-appellee's premises.