JOURNAL ENTRY and OPINION
{¶ 1} The court granted defendant Dandre Ogletree's motion to suppress evidence seized on grounds that the police failed to observe any criminal or suspicious activity to justify an investigative stop. The state appeals.
 {¶ 2} In State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8, the supreme court stated:
 {¶ 3} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.
 {¶ 4} "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997),124 Ohio App.3d 706, 707 N.E.2d 539."
 {¶ 5} The state presented just one witness during the suppression hearing: the arresting officer. The officer testified that he and his partner had been on daylight patrol on Cleveland's near west side in an area he described as being one of "high crime." He said that he knew Ogletree and had previously warned Ogletree "not to be hanging on the corner right there." When the officer cruised by the corner in question, he saw Ogletree standing there. Ogletree saw the officers and turned and ran into an apartment building. The officer took no action in response to Ogletree's flight. About an hour later, the officer and his partner cruised by the corner again. This time, the officer saw Ogletree and a woman he characterized as a "known prostitute drug user" standing on the corner. The two were engaged in conversation, and the officer did not see "anything exchanged." When the female noticed the squad car, she walked away. The officers ignored her and approached Ogletree "to investigate further in connection with what we believe was drug activity." The officer said to Ogletree, "what's going on, what did that female want from you * * *?" When Ogletree responded, the officer found it apparent that Ogletree was "swishing" something in his mouth. The officer believed Ogletree had drugs in his mouth, so he asked him to open his mouth. When Ogletree did so, the officer said that he immediately noticed two rocks of crack cocaine. He grabbed Ogletree and ordered him to spit out the rocks. After a short struggle, they subdued Ogletree, at which time he spit out two rocks of crack cocaine.
 {¶ 6} The state offered two different theories in defense of Ogletree's motion to suppress the crack cocaine: first, that the police conducted a valid investigative stop and, second, that the encounter between Ogletree and the police was consensual in nature up until the time when Ogletree voluntarily opened his mouth and exposed the crack cocaine for the officer to see. The court rejected the first theory by finding that the police "had no specific facts, nor did they observe any criminal or suspicious activity that would justify their stopping the defendant in conducting an investigative search." The court found Ogletree's mere association with a known prostitute and drug user insufficient reason in which to detain and search him. The court did not directly address the state's second theory, but very obviously rejected it by remarking that one of the judges of this court would "be happy to hear that argument."
 Investigative Stop {¶ 7} Bypassing the Fourth Amendment warrant requirement, the police may briefly detain an individual if the individual is engaged in suspicious behavior. Terry v. Ohio (1968),392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868. To justify an investigatory stop, the officer must be able to "point to specific and articulable facts, which taken together with rational inferences with those facts, reasonably warrant an intrusion." Id. at 30.
 {¶ 8} We agree with the court's conclusion that the police lacked an articulable suspicion that criminal activity had occurred. The arresting officer testified that up to the point where he saw Ogletree and the female standing together on the corner, they had done nothing to suggest that they were engaged in criminal activity. The officer specifically testified that he saw nothing exchanged and could only say that they were involved in a conversation before he made the decision to approach them. And even if we were to credit Ogletree's flight from the officers, we would do so with the acknowledgment that the flight occurred one hour prior to the stop. While we express no opinion on whether a stop would have been justified at that point on the facts presented at the suppression hearing, we have no doubt that the police did not consider Ogletree's flight to be significant enough to warrant an approach at that time. This means that only those facts relating to the stop on the second cruise by the corner could, under the facts of this case, justify the stop.
 {¶ 9} Moreover, the court had reason to question the veracity of the officer's testimony. Although the officer claimed that Ogletree had been speaking to a prostitute/drug user at the time, he acknowledged that his arrest report failed to mention her. On cross-examination he claimed that "I didn't feel it was pertinent to be put in the report." Nevertheless, her presence with Ogletree was the basis for the investigatory stop inasmuch as the officer said that he asked Ogletree "what did that female want from you * * *?" This testimony strongly suggests that her reputation as a drug user in conversation with Ogletree in a high crime area caused the officer to investigate further. If she was not present, the basis for the investigatory stop would disappear, as Ogletree would have been alone on the corner.
 {¶ 10} In short, the facts supporting the stop were only those relating to Ogletree's presence on the corner of a high crime area, engaged in conversation with a female known to be a drug user and prostitute. The officer could point to no "specific and articulable facts" to justify his suspicion that criminal activity was occurring. In fact, he pointedly said that the two had been engaged in legal conduct (a conversation) and that he saw nothing pass between them. The totality of the circumstances does not show a "particularized and objective basis" for suspecting legal wrongdoing. United States v. Arvizu (2002),534 U.S. 266, 273, 151 L.Ed.2d 740, 122 S.Ct. 744, 750. We therefore find the court did not err by concluding that a permissible Terry stop had not occurred.
 Consensual Encounter {¶ 11} The Fourth Amendment not only applies to searches, but to "seizures" as well. "[A] person is `seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall (1980),446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497. As long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. Florida v. Bostick (1991), 501 U.S. 429,434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (internal quotation omitted). Among the considerations used to determine the consensual nature of the encounter are the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. Mendenhall,446 U.S. at 554.
 {¶ 12} "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Florida v.Royer (1983), 460 U.S. 491, 487.
 {¶ 13} Even if the initial basis for detention proves invalid, a detention may become a consensual encounter. This can occur when a reasonable person in the defendant's position would feel free to leave. See United States v. Turner (C.A.10, 1991),928 F.2d 956, 959.
 {¶ 14} The officer testified that he approached Ogletree and asked him, "what's going on, what did that female want from you * * *?" At no point did he order Ogletree to remain nor did he indicate that Ogletree was not free to walk away. A trier of fact could conclude that Ogletree had every opportunity to walk away from the police officers. He suffered no repercussions when he earlier left the corner when the police came. Ogletree may have thought that the police were not enforcing the directive to stay off the corner. Indeed, Ogletree's partner in conversation left the scene without recrimination, so he could well have left the scene again. Facially, these facts tend to suggest a consensual encounter.
 {¶ 15} Crim.R. 12(F) states that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Although couched in mandatory language, we tend to apply Crim.R. 12(F) mainly in cases where the record provides an appellate court with an insufficient basis to review assignments of error relating to factual issues in pretrial motions. See State v. King (1999),136 Ohio App.3d 377, 381; State v. Fannin, Cuyahoga App. No. 79991, 2002-Ohio-6312.
 {¶ 16} Our earlier discussion about the circumstances faced by Ogletree was necessarily conjecture. The evidence could have permitted different conclusions on whether Ogletree and the police engaged in a consensual encounter on the street corner. This becomes a classic circumstance where findings of fact are crucial to the resolution of the issue. "There is no bright line between a consensual encounter and a Terry stop, rather, the determination is a fact intensive one which turns upon the unique facts of each case. Issues involving consent are particularly fact-intensive." United States v. Beck (C.A.8, 1998),140 F.3d 1129, 1135. Instead of making findings on contested facts, the court made a cryptic remark to the state about offering the consent issue to a judge on the court of appeals. We cannot tell from the record if the court was making a sincere statement or being sarcastic, but we do conclude that the court abrogated its responsibility as the trier of fact.
 {¶ 17} We therefore sustain this part of the state's assignment of error. We order this case remanded with instructions for the court to make findings of fact necessary to resolve the issue of consent.
Judgment reversed and remanded.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., concurs.
 COLLEEN CONWAY COONEY, J., DISSENTS WITH SEPARATE OPINION.
 DISSENTING OPINION