JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals the judgment of the trial court granting the motion to suppress of defendant-appellee, Jamien Fann. We affirm.
 {¶ 2} Fann was indicted in a multiple-count indictment. Count one charged possession of drugs and counts two and three charged drug trafficking. Counts one through three were alleged to have occurred during a "controlled buy" of drugs on January 21, 2006. The remaining counts were alleged to have occurred during a search executed on January 25, 2006. Count five charged having a weapon while under disability. Counts seven, nine and 11 charged possession of drugs and each contained a one-year firearm specification. Counts eight, ten, 12 and 13 charged drug trafficking and each contained a one-year firearm specification. Count 14 charged possession of criminal tools.[1]
 {¶ 3} Fann filed a motion to suppress the evidence recovered as a result of the January 25 search. After a hearing, the court granted the motion, and the State appealed, claiming the ruling left it unable to proceed on counts seven through 14.
 {¶ 4} At the suppression hearing, Detective Erin O'Donnell of the Cleveland police department testified that, based on a complaint of drug activity, the police began an investigation of 7607 Redell Avenue in Cleveland. O'Donnell testified that the police received information from more than one source that a black vehicle with a *Page 4 
gold top, seen at that address, was being used for drug trafficking. The detective explained that surveillance of 7607 Redell Avenue was conducted and that signs of drug trafficking were observed, so a confidential reliable informant was used to make a controlled buy on January 21, 2006. Based on that controlled buy, a search warrant was issued, authorizing the search of the residence.
 {¶ 5} The search warrant was executed on January 25, 2006. Fann was in the residence, and upon being searched, crack cocaine and marijuana were recovered from his person. The police also found a loaded handgun under the kitchen sink, for which Fann claimed ownership. O'Donnell testified that the police also recovered a set of car keys from Fann's pockets, and upon asking him where his vehicle was, he responded "out front." Fann was arrested and read his rights.
 {¶ 6} O'Donnell testified that "Sergeant Richardson asked that we tow the car incident to arrest." She then informed Fann that his vehicle was going to be impounded and, according to her, Fann became nervous and asked if his cousin could come get the vehicle. Fann's request was denied. The detective testified that a vehicle may be impounded pursuant to Cleveland Codified Ordinances 405.02(g). She also testified that the Cleveland police department has its own policy on impounding cars, but she did not know what the policy was.
 {¶ 7} According to O'Donnell, the basis for searching Fann's vehicle was that "[i]t was being towed incident to arrest. We also had probable cause to believe, due to our informants' information, that they were transporting drugs in that vehicle." *Page 5 
 {¶ 8} The detective admitted that Fann was arrested inside the house located at 7607 Redell Avenue and was neither seen operating the vehicle nor was he "removed" from the vehicle. She also admitted that the vehicle was not included in the affidavit accompanying the search warrant. Moreover, O'Donnell admitted that the informant from the January 21 "buy" was not present at the January 25 search and, therefore, no one identified the vehicle as being the one seen by the informant.
 {¶ 9} Detective Anthony Spencer conducted the inventory of the vehicle, which was found locked and legally parked on the street two houses east of 7607 Redell Avenue. The vehicle, a Ford Bronco, was black with a tan top. Spencer testified that he was informed that the vehicle was being towed because its owner was being arrested, and that he was unaware of O'Donnell's suspicion that drugs were in the vehicle.
 {¶ 10} Spencer testified that upon entering the locked vehicle, he did a "visual search," and on the rear driver side door "noticed that there was a piece of plastic jutting out of it, I guess it's a speaker cover or whatever you would call it." Spencer testified that he "tugged on it [the protruding plastic] [and] the whole top came off and you could clearly see there was a lot drugs just sitting there."
 {¶ 11} Detective Spencer also testified that, during an inventory search, it would not be "normal" for the police to look in places such as behind speakers or *Page 6 
under dashboards. According to the detective, it was "just curiosity" in this case that caused him pull on the plastic.
 {¶ 12} The testimony also revealed that the information on the tow sheet was not accurate. For example, the tow sheet indicated that the vehicle was towed from 7607 Redell Avenue, when it was actually towed from the street in front of a house two doors away. The testimony further revealed that the drugs found in the vehicle were not listed on the inventory forms; they were, however, listed in the police report.
 {¶ 13} The trial court found that there were two problems with the inventory search. First, the court found that there was little, if any, testimony regarding the Cleveland police department's standard practice for inventorying vehicles impounded pursuant to a lawful arrest. Second, the court found that Detective Spencer's inventory search went beyond the bounds of the law. The court further found that the automobile exception did not permit the warantless search of the vehicle because exigent circumstances did not exist.
 {¶ 14} Appellate review of a suppression ruling involves mixed questions of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. An appellate court must accept the trial court's findings of fact as true if they are supported by *Page 7 
competent and credible evidence. Burnside. The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 15} In its first assignment of error, the State contends that the trial court erred in finding that its evidence was insufficient in regard to whether the inventory search was conducted pursuant to standard police policy.
 {¶ 16} In its ruling, the trial court provided the following grounds for its conclusion that the evidence was insufficient to demonstrate that the search was conducted pursuant to standard police policy: 1) "there was little, if any, testimony regarding the standard practice employed by Cleveland Police for the inventory of vehicles impounded pursuant to a lawful arrest[;]" and 2) "the vehicle tow and inventory sheets were incomplete and did not comport with" the other evidence. We find the first reason dispositive.
 {¶ 17} The State argues that it provided sufficient evidence of the police department's practice and policy regarding inventory searches. In particular, the State cites testimony from the detectives that the "policy" in conducting an inventory search is to account for valuable items in a vehicle, protect the owner of the vehicle, police and private towing companies from claims of theft or damage, and to hold the vehicle for safekeeping for the owner. Those administrative "reasons" for an inventory search were articulated by the Ohio Supreme Court in State v.Mesa, 87 Ohio St.3d 105, 1999-Ohio-253, 717 N.E.2d 329. *Page 8 
 {¶ 18} As an administrative function unrelated to a criminal investigation, an inventory search does not implicate the policies underlying the warrant requirement of the Fourth Amendment. Id. at 109. "In order for an inventory search to be constitutionally valid, it must be `reasonable,' that is, it must be conducted in good faith, not as a pretext for an investigative search, and in accordance with standardized police procedures or established routine." State v. Wilcoxson (July 25, 1997), Montgomery App. No. 15928. See, also, State v. Sarrocco (1997),96 Ohio Misc.2d 1, 4, 707 N.E.2d 1219 ("Evidence of standardized criteria or established routine establishes that the claimed inventory search is not just a ruse for an otherwise illegal search."); State v.Corrado (Feb. 20, 1998), Lake App. No. 96-L-104 ("Without evidence of the policy as it relates to [containers found in a vehicle], an inventory search of such containers * * * is constitutionally impermissible.")
 {¶ 19} In analyzing the State's argument, we note a distinction between "policy" and "reasons." The portion of Mesa relied on by the State sets forth the "reasons" why police departments conduct inventory searches. Thus, the testimony of the detectives basically recited theMesa reasons, but did not provide any insight into the Cleveland police department's policy, practice or procedure when conducting an inventory search. For example, the testimony did not state that the Cleveland police department's policy is to search areas where items are protruding *Page 9 
from enclosed areas. To the contrary, Detective Spencer testified that he generally would not search an area covering a speaker, but his "curiosity" prompted him to do so in this case. Moreover, Detective O'Donnell testified that she did not know what the police department's policy was in regard to such a search.
 {¶ 20} In Mesa, the police searched an unlocked but closed compartment of a vehicle, i.e., the armrest console. The policy of the Lakewood police department stated that `"open compartments of the vehicle are to be searched' and that locked compartments shall not be opened * * *.'" Id. at 110, quoting Codified Ordinances of the City of Lakewood. In finding that the policy sufficiently addressed the inventory of closed compartments within a vehicle and governed the procedure to be used by the police, the Supreme Court noted that, like glove compartments, consoles are a place where valuables may be temporarily stored. Id. In this case, the detectives not only failed to give testimony as to the specific policy, practice or procedure of the Cleveland police department for searching enclosed areas, by Detective Spencer's own admission, valuables are not generally stored in an area covering speakers.
 {¶ 21} We are also not persuaded that the State's introduction into evidence of Cleveland Traffic Code 405.02(g) was sufficient evidence of the Cleveland police department's regarding inventory searches in this case. Said section provides as follows:
 {¶ 22} "[p]olice officers are authorized to provide for the removal of a vehicle under the following circumstances: *Page 10 
 {¶ 23} "* * *
 {¶ 24} "(g) When any vehicle is left unattended due to theremoval of an ill, injured or arrested operator." (Emphasis added.)
 {¶ 25} The testimony in this case is clear that Fann was not removed from the vehicle and that the police never saw him operating the vehicle. Cleveland Traffic Code 405.02(g), therefore, is inapplicable to this case.
 {¶ 26} Moreover, we are not persuaded by the State's argument that "the unusual circumstances of a plastic bag sticking out justified further exploration to determine if any valuables were behind the speaker cover." By Detective Spencer's own admission, he pulled on the plastic simply out of "curiosity."
 {¶ 27} Accordingly, the State's first assignment of error is overruled.
 {¶ 28} For its second assignment of error, the State contends that the trial court erred by finding that the automobile exception to the warrant requirement was inapplicable.
 {¶ 29} In its ruling, the trial court found that although the police had probable cause to search the vehicle, the State failed to prove that exigent circumstances justified the search.
 {¶ 30} For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. Katz v. United States (1967), 389 U.S. 347, 357,19 L.Ed.2d 576, 88 S.Ct. 507; State v. Brown (1992), 63 Ohio St.3d 349, 350,588 N.E.2d 113. This requires a two-step *Page 11 
analysis. First, there must be probable cause. State v. Moore,90 Ohio St.3d 47, 49, 2000-Ohio-10, 734 N.E.2d 804. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. Id. If the State fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed.Mapp v. Ohio (1961), 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684.
 {¶ 31} One exception to the warrant requirement is the "automobile exception." This exception was traditionally justified by the inherent mobility of automobiles, which often created exigent circumstances.California v. Carney (1985), 471 U.S. 386, 391, 85 L.Ed.2d 406,105 S.Ct. 2066; State v. Mills (1992), 62 Ohio St.3d 357, 367,582 N.E.2d 972. Although ready mobility was the original justification for the automobile exception, later cases have made clear that it is not the only basis for the exception. Carney, at 391. Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. South Dakota v.Opperman (1976), 428 U.S. 364, 367, 49 L. Ed. 2d 1000, 96 S. Ct. 3092.
 {¶ 32} In fact, the United States Supreme Court has recognized that the automobile exception has no separate exigency requirement.United States v. Ross (1982), 456 U.S. 798, 809, 72 L.Ed.2d 572,102 S.Ct. 2157. In cases where probable cause exists to search a vehicle "a search is not unreasonable if based on *Page 12 
facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." Id.
 {¶ 33} In New York v. Belton (1981), 453 U.S. 454, 101 S.Ct. 2860,69 L.Ed.2d 768, the United States Supreme Court held that a search of the passenger compartment of a vehicle, and all containers found within that compartment, is permissible when performed as incidental to the arrest of a recent occupant of automobile. In Thornton v. United States (2004),541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905, the Court extended theBelton rule to allow a search of the interior compartment of an automobile even though the occupant of the vehicle was outside the car when the police first made contact with him. In Thornton, prior to the arrest, the defendant had pulled into a parking lot, locked the car, and was standing next to the car when confronted by the police. The police conducted a pat-down search of the defendant, which led to the discovery of drugs. Thornton was arrested, and his car was searched. The Court upheld the search of the car, stating:
 {¶ 34} "While an arrestee's status as a `recent occupant' may turn on his temporal and spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment the officer first initiated contact with him." Id. at 622.
 {¶ 35} In this case, in finding that the automobile exception applied, the trial court relied on the fact that Fann "did have keys in his possession and indicated that they were the keys to his car and that it was parked out front." We find that that fact *Page 13 
did not make Fann a "recent occupant." The car was legally parked two houses away from where the police found Fann, and no one saw, nor did Fann admit, that he had recently occupied it. Accordingly, we hold, for a reason other than did the trial court, that the automobile exception did not apply in this case.
 {¶ 36} The State's second assignment of error is overruled.
 {¶ 37} In its third and final assignment of error, the State contends that even if the search of Fann's vehicle was not done according to the department's inventory policy or the automobile exception, the evidence would have been inevitably discovered.
 {¶ 38} Under the inevitable discovery exception, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." State v.Perkins (1985), 18 Ohio St.3d 193, 480 N.E.2d 763. Here, however, the State waived the issue of inevitable discovery by failing to raise it before the trial court. See State v. Helton, 160 Ohio App.3d 291,2005-Ohio-1789, 826 N.E.2d 925. The State's contentions, both in its brief in opposition to Fann's motion to suppress and its questioning and argument at the suppression hearing, were that the search of the vehicle was permissible under the inventory exception and/or the automobile exception.
 {¶ 39} Notwithstanding the State's failure to preserve the issue of inevitable discovery, we find it inapplicable in this case. In a case, where as here, the State *Page 14 
argued that there was probable cause to secure a search warrant, the Third Appellate District rejected the argument, finding that "[w]hile there was undoubtedly sufficient probable cause to obtain a search warrant * * * in this case, * * * the mere fact that a search would in all probability have been issued on request cannot be considered as the implementation of investigative procedures that would have ultimately led to the Inevitable' discovery of the evidence. State v. Masten (Sept. 29, 1989), Hancock App. No. 5-88-7, at 20-21. The Third District reasoned that "[i]t seems to us that any other interpretation would pose a significant threat to the Fourth Amendment warrant requirement with its corollary magisterial determination of probable cause." Id. at 21. We agree with the Third District.
 {¶ 40} Accordingly, the State's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, JUDGE
 JAMES J. SWEENEY, P.J., and *Page 15 
MARY J. BOYLE, J., CONCUR
[1] Counts four and six were relative to Fann's co-defendant. *Page 1