[Cite as *State v. Callan*, 2011-Ohio-2279.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 95310

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JEREMY CALLAN

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-529312

**BEFORE:** E. Gallagher, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Public Defender
BY:   Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Melissa Riley
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN A. GALLAGHER, J.:

{¶ 1}   Defendant-Appellant, Jeremy Callan, appeals from his convictions in the Cuyahoga County Court of Common Pleas.   Appellant argues that the trial court erred in denying his motion to suppress the evidence seized from a search of his apartment, that his convictions are not supported by legally sufficient evidence, and that his convictions are against the manifest weight of the evidence.   Appellant additionally argues that the trial court's jury instruction regarding constructive possession was in error and that his counsel was

ineffective for failing to object to the jury instruction. For the following reasons, we reverse and remand.

{¶ 2} Appellant was indicted on October 28, 2009 and charged with trafficking less than 200 grams of marijuana (Count 1), possession of less than the bulk amount of Oxycodone (Count 2), possession of less than 5 grams of cocaine (Count 3), and possession of criminal tools (Count 4). Appellant pled not guilty and filed a motion to suppress evidence seized pursuant to a search of his apartment. The trial court held a suppression hearing on January 19, 2010 and denied appellant's motion on January 27, 2010 without making any factual findings or stating any legal conclusions. Appellant's case proceeded to a jury trial on April 19, 2010, and the jury found appellant guilty of possession of five Percocet pills and less than five grams of cocaine (Counts 2 and 3), both fifth-degree felonies. The jury found appellant not guilty of trafficking marijuana and possession of criminal tools (Counts 1 and 4). The trial court imposed a sentence of five years of community control sanctions and a $500 fine. Appellant brought the present appeal, raising the five assignments of error contained in the appendix of this opinion.

{¶ 3} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress the evidence obtained in a search of his apartment.

{¶ 4} Appellant was the tenant of 1383 Bonnieview Avenue, No. 7, in Lakewood, Ohio. Angelo Coutris, the managing partner of a limited partnership that owned the 1383

Bonnieview apartment building, had a water usage concern with the property. Suspecting a water leak, Coutris provided the tenants of 1383 Bonnieview with proper notice that the apartments would be inspected. On June 12, 2009, Coutris, accompanied by a property manager and a plumber, entered apartment No. 7 in search of a water leak. Coutris and his companions found what they believed to be a bag of marijuana and a pipe on a table in the apartment. At the urging of his companions, Coutris contacted his attorney, Thomas Corrigan, and told him what they had discovered. Coutris subsequently left the scene. Thomas Corrigan contacted the Lakewood police department and related to detectives that his client had found suspected marijuana and a pipe in the apartment of one of his tenants. Corrigan did not represent to the police that he owned the property or that he had any personal knowledge of the alleged drugs and drug paraphernalia on the premises.

{¶ 5} Lakewood Police Officer Nicholas Rebraca ("Officer Rebraca") received a call from police dispatch reporting that an "exorbitant amount [of marijuana] with plants and kind of growing and stuff," was discovered at the Bonnieview Avenue apartment. (Tr. 25.) When Officer Rebraca arrived at the scene, he encountered Coutris's property manager and plumber. These men led Officer Rebraca into apartment No. 7 where they pointed to a bag containing suspected marijuana in an amount that would result in a possession charge of a minor misdemeanor. The property manager informed Officer Rebraca that appellant lived in apartment No. 7. Inside the apartment, Officer Rebraca did not see the large amounts of

marijuana and plants that he had expected to find based on the information provided to him by Lakewood police dispatch.

{¶ 6} Lakewood Police narcotics Detective David Kappa ("Detective Kappa") was notified of the call from 1383 Bonnieview, purporting that a large number of marijuana plants had been found in apartment No. 7. Detective Kappa was familiar with the interior layout of apartment No. 7 from a prior unrelated investigation. Detective Kappa described the interior to be wide open, allowing for a cursory view of the whole apartment. After receiving the initial report of a large number of marijuana plants, Detective Kappa contacted Officer Rebraca on scene and asked if plants were visible within the apartment. Officer Rebraca informed Detective Kappa that there were not any marijuana plants visible within the apartment, only a single bag of marijuana and a smoking pipe commonly used to smoke marijuana. Based on the initial report from dispatch, Officer Rebraca told Detective Kappa that he was surprised that there were no marijuana plants. After discussing what Officer Rebraca had found at the apartment, Detective Kappa told Rebraca that he would type up a search warrant for the apartment.

{¶ 7} In obtaining a search warrant for the premises, Detective Kappa provided the following relevant facts in his affidavit for a search warrant:

{¶ 8} "On June 12, 2009, at 1238 hrs, apartment owner Thomas Corrigan contacted the Lakewood Police Department and advised he had allowed plumbers into apartment #7 to

do some work. Upon entering apartment #7, Corrigan and the plumbers observed a purported large amount of marijuana plants in plain view.

{¶ 9} "Detective Kappa spoke to Patrolman Rebraca who was on the scene. Officer Rebraca reported that all that was visible to him at this time was a baggie of marijuana and a pipe commonly used to smoke marijuana both of which were on a table in the living room area. Officer Rebraca was not aware that any marijuana plants had been located.

{¶ 10} "The current tenant of apartment #7, Jeremy D. Callan, dob: 9/10/86, ssn#***-**-****, is not home and is allegedly at work."

{¶ 11} Based upon Detective Kappa's affidavit, a search warrant for the apartment was issued by the judge of the Lakewood Municipal Court. Evidence uncovered during the search, pursuant to the warrant, included small packages of loose marijuana, smoking paraphernalia commonly used to smoke marijuana, a digital scale designed to appear as an iphone, a small amount of cocaine, five Percocet pills, and a revolver with four live rounds. Detective Kappa also discovered pieces of paper with appellant's name and the Bonnieview address on them.

{¶ 12} Appellant argues that the trial court erred in denying his motion to suppress because the initial police entry into the apartment was an unlawful warrantless search, that the information gathered therein inspired the police to seek and obtain a search warrant, and that the police used false and/or misleading information to secure the search warrant.

{¶ 13} We begin by noting that appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. In deciding a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. Id., citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. The reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. We note that Crim.R. 12(F) mandates that a trial court "state its essential findings on the record" when "factual issues are involved in determining a motion." In this instance, the trial court did not issue any findings of fact in denying appellant's motion to dismiss. Nevertheless, we conclude that the trial court's failure to provide its "essential findings" on the record in this case is not fatal to a review of the trial court's ruling on the motion, because the record provides a sufficient basis to review appellant's assignments of error. See, e.g., *State v. Ogletree*, Cuyahoga App. No. 86285, 2006-Ohio-448, at ¶15; *State v. King* (1999), 136 Ohio App.3d 377, 736, N.E.2d 921.

{¶ 14} With respect to the trial court's conclusion of law, the reviewing court applies a de novo standard of review and decides whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 155, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

**{¶ 15}** The Fourth Amendment of the Constitution of the United States and Article I, Section 14, Ohio Constitution, protect against unreasonable searches and seizures. Evidence obtained in violation of the Fourth Amendment is barred by the Exclusionary Rule. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

**{¶ 16}** A citizen's right to be free from unreasonable search and seizure is stronger in one's own home than it is in a public place. *Payton v. New York* (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639. A warrantless search or seizure is per se unreasonable unless it falls within one of the recognized exceptions to the warrant requirement. Id., citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *State v. Welch* (1985), 18 Ohio St.3d 88, 91, 480 N.E.2d 384. The government may not, therefore, conduct a search or seize property inside a person's home unless one of several exigent circumstances exists. Id. at 586-587, 100 S.Ct. 1371, 63 L.Ed.2d 639. The government bears the burden of proving an exception to the warrant requirement. *N. Royalton v. Bramante* (1999), Cuyahoga App. No. 74019, at 4.

**{¶ 17}** The following exceptions to the search warrant requirement have been recognized by the Ohio Supreme Court: (1) search incident to a lawful arrest; (2) consent signifying waiver of constitutional rights; (3) the stop-and-frisk doctrine; (4) hot pursuit; (5) probable cause to search accompanied by the presence of exigent circumstances; and (6) the plain view doctrine. *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 482

N.E.2d 606.

{¶ 18} In the present case, Officer Rebraca entered and searched appellant's apartment without a warrant at the invitation of the building's property manager. However, it is well-established that a landlord cannot consent to a search of a tenant's apartment for Fourth Amendment purposes. *Chapman v. United States* (1961), 365 U.S. 610, 616-618, 81 S.Ct. 776, 5 L.Ed.2d 828. Thus, Officer Rebraca's search of appellant's apartment was unlawful unless it fell within one of the above exceptions to the search warrant requirement.

{¶ 19} Without specifically citing any authority, the state argues that it was necessary for Officer Rebraca to enter and search the apartment in order to secure the drugs. The state's theory essentially argues that the exigent circumstances exception applies to this situation in that the evidence in this case was susceptible to being removed or destroyed.

{¶ 20} When police officers seek to rely on the destruction of evidence exception in justifying a warrantless entry, they must show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent. *State v. Baker & Bakey* (1991), Cuyahoga App. Nos. 60352 and 60353, citing *United States v. Sangineto-Miranda* (C.A.6, 1988), 859 F.2d 1501, 1512. A police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a residence if he or she can demonstrate: (1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction

of evidence would be in order.    Id.

{¶ 21} The destruction of evidence exception does not apply in this instance.    Officer Rebraca met the property manager and plumber who were waiting outside the apartment.    No one was inside the apartment, and the state offered no evidence that Officer Rebraca was led to believe anyone else was inside.    The state did not offer any evidence that Officer Rebraca feared third parties had learned of the investigation and would soon destroy the evidence. We conclude that Officer Rebraca's   warrantless entry and search of appellant's apartment was an illegal search in violation of the appellant's Fourth Amendment rights.

{¶ 22} Appellant argues that the search warrant subsequently obtained by Detective Kappa was improperly tainted by information garnered by Officer Rebraca's unlawful search and, as such, all evidence discovered pursuant to the search warrant must be excluded.    The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality, or "fruit of the poisonous tree."    *State v. Smith*, 163 Ohio App.3d 567, 2005-Ohio-5204, 839 N.E.2d 451, citing *Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

Following an illegal entry, evidence obtained pursuant to a search warrant must be excluded unless the police based the warrant affidavit on a source of   information independent from the unlawful conduct.    *Murray v. United States* (1988), 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472.    For the independent source exception to apply, the information presented in the

warrant affidavit must be wholly unconnected to the illegal entry, and the decision to seek the warrant must not be prompted by information gained during the illegal entry. Id.; *State v. Carter* 69 Ohio St.3d 57, 68, 630 N.E.2d 355.

{¶ 23} Detective Kappa's search warrant affidavit unquestionably presented information derived from the illegal search, most importantly, that "[Officer] Rebraca reported that all that was visible to him at this time was a baggie of marijuana and a pipe commonly used to smoke marijuana * * *." This information goes beyond the initial report to police in that a police officer confirms that the suspected drugs are marijuana and the pipe is a pipe commonly used to smoke marijuana.

{¶ 24} Furthermore, Detective Kappa's decision to seek a search warrant was not independent of the information gained during the illegal entry. Detective Kappa did not pursue a search warrant based on the initial tip he received. Detective Kappa only sought the search warrant after he received Officer Rebraca's first hand account of the illegal search.

{¶ 25} Even if we found that Detective Kappa was not prompted to seek the warrant by Officer Rebraca's information, and we further examined the warrant affidavit with the facts obtained from the lawless search removed pursuant to the Sixth Circuit's methodology in *U.S. v. Jenkins* (2005), 396 F.3d 751, 757 -759 (holding that if the application for a warrant "contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies"), the search warrant would still be defective.

{¶ 26} Excising from the affidavit all the information relating to Officer Rebraca's search leaves only "apartment owner Thomas Corrigan contacted the Lakewood Police Department and advised he had allowed plumbers into apartment #7 to do some work. Upon entering apartment #7, Corrigan and the plumbers observed a purported large amount of marijuana plants in plain view." This statement is an inaccurate account of the tip provided by Corrigan. The state argues that Detective Kappa included this information not vouching for its veracity, but rather to explain why the police were investigating.

{¶ 27} Even if the statement was not merely context for why the police began an investigation, it fails to validate the search warrant because Detective Kappa knew it was factually inaccurate. At some point between Corrigan initially reporting the tip to the Lakewood Detective Bureau and the tip being passed along to Officer Rebraca and Detective Kappa, the contents of the tip changed. No evidence was presented that this misstatement was the fault of Detective Kappa. However, after speaking with Officer Rebraca, Detective Kappa knew that this statement was inaccurate and the apartment did not contain a large amount of marijuana plants in plain view. To base a search warrant affidavit solely upon information that Detective Kappa knew at the time to be false would, at the least, be a reckless disregard for the truth, in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.

{¶ 28} Finally, though not specifically raised by the state, we note that the inevitable

discovery rule is inapplicable in this instance. Pursuant to the inevitable-discovery doctrine, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Huffman*, Cuyahoga App. No. 93000, 2010-Ohio-5116, citing *State v. Perkins* (1985), 18 Ohio St.3d 193, 196, 480 N.E.2d 763; *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. The inevitable discovery doctrine is applied only in limited circumstances where the state can show by a preponderance of the evidence that, despite the constitutional violation, discovery of the evidence was, in fact, inevitable. The state must prove not simply that the government could have found the evidence without the constitutional violation, but affirmatively would have found it. *State v. Slagter*, Cuyahoga App. No. 76459, citing *State v. Perkins* (1985), 18 Ohio St.3d 193, 480 N.E.2d 763, syllabus. Here, however, the state waived the issue of inevitable discovery by failing to raise it before the trial court. *State v. Fann*, Cuyahoga App. No. 89334, 2007-Ohio-6985, citing *State v. Helton*, 160 Ohio App.3d 291, 296, 2005-Ohio-1789, 826 N.E.2d 925.

{¶ 29} Furthermore, we held in *State v. Miller* (1991), 77 Ohio App.3d 305, 316, 602 N.E.2d 296, that the inevitable discovery doctrine could apply if police were attempting to get a warrant independent of a warrantless search. However, in the case sub judice, as in *Miller*, no investigation independent of the illegal search was under way, and no attempt was made to

obtain a warrant without information garnered from the illegal search.

{¶ 30} In sum, we conclude that Officer Rebraca's warrantless entry and search of appellant's apartment was an illegal search and not justified by exigent circumstances. As information garnered by Officer Rebraca's search prompted Detective Kappa to seek a search warrant for the premises, and Detective Kappa included such information in his search warrant affidavit, the evidence obtained pursuant to the search warrant should have been excluded.

{¶ 31} We find appellant's first assignment of error to be well taken and hold that the trial court erred in denying appellant's motion to suppress. We find that appellant's remaining assignments of error are moot.

**Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.**

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR

# APPENDIX

*Assignment of Error No. 1*:

"The trial court erred in denying appellant's motion to suppress the evidence in this case as it was obtained in violation of his state and federal constitutional right to be free of unreasonable searches and seizures."

*Assignment of Error No. 2*:

"Jeremy Callan's convictions are not supported by legally sufficient evidence as required by State and Federal due process."

*Assignment of Error No. 3*:

"Jeremy Callan's convictions are against the manifest weight of the evidence."

*Assignment of Error No. 4*:

"The trial court plainly erred when it instructed the jury regarding 'constructive possession.'"

*Assignment of Error No. 5*:

"Jeremy Callan was denied his sixth amendment right to effective assistance of counsel because his counsel failed to object to the plainly erroneous jury instruction regarding possession."