[Cite as *State v. Haynesworth*, 2019-Ohio-1986.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107231 |
| v. | : | |
| ANTHONY HAYNESWORTH, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; CONVICTION VACATED
**RELEASED AND JOURNALIZED:** May 23, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-618340

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nathaniel Tosi, Assistant Prosecuting Attorney, *for appellee.*

John T. Forristal, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Anthony Haynesworth ("Haynesworth"), appeals the trial court's denial of his motion to suppress. For the reasons set forth below, we reverse and vacate Haynesworth's conviction and sentence.

{¶ 2} On June 14, 2017, the city of Lakewood police received an anonymous

call that two men were walking in the middle of the street on Grace Avenue and were trying the handles of car doors. Approximately two minutes later, a patrol car responded to the call and observed two males, later identified as Haynesworth and Wesley Jones ("Jones"),walking along the sidewalk on Detroit Avenue. The police cruiser pulled next to the sidewalk and the officers quickly exited the vehicle. Officer Michael Perhacs ("Officer Perhacs") immediately approached Haynesworth and Jones and told them of the complaint and asked if they had identification.

{¶ 3} Haynesworth and Jones provided their identification cards and informed the officers that they had just walked down from Grace Avenue to Detroit Avenue. Haynesworth and Jones adamantly denied attempting to open any car doors. Jones informed the officers that he lived around the corner on Dowd Avenue and that they were en route to a bar on Detroit Avenue.

{¶ 4} Dispatch informed the officers that Haynesworth had an outstanding warrant in Lake County for an alleged failure to appear in court. The officers handcuffed Haynesworth and returned Jones's identification card. They gave Jones the option of going on his way or waiting until they received confirmation that Lake County wanted Haynesworth transported to their jurisdiction. Jones opted to wait with Haynesworth.

{¶ 5} Almost 30 minutes later, after the officers received confirmation that Haynesworth was to be transported to Lake County, Haynesworth informed them he had a handgun in the back waistband of his trousers. The officers took possession of the handgun and advised Haynesworth he was under arrest for carrying a

concealed weapon and having weapons while under disability.

{¶ 6} On August 8, 2017, Haynesworth's defense counsel filed a motion to suppress, and requested an oral hearing. Subsequently, through a joint pleading, the prosecutor and defense counsel informed the trial court that in lieu of a suppression hearing, they would stipulate that the trial court could rule on the motion to suppress by relying only on the briefs, exhibit No. 1 (pages 3 and 4 of the Lakewood police report) and exhibit No. 2 (Lakewood police body camera videos).

{¶ 7} On March 18, 2018, the trial court denied Haynesworth's motion to suppress, without issuing any findings of fact or conclusions of law. Thereafter, defense counsel filed a motion for essential findings concerning the trial court's ruling on the motion to suppress.

{¶ 8} On May 2, 2018, Haynesworth pled no contest to the charges and the trial court found him guilty. Defense counsel withdrew the motion for essential findings the same day. On May 23, 2018, the trial court sentenced Haynesworth to 90 days of GPS monitored house arrest, 36 months of community control, and 100 hours of community service. In addition, the trial court ordered Haynesworth to submit to random drug testing, complete an intensive drug treatment program, and obtain verifiable employment.

{¶ 9} Haynesworth now appeals, assigning the following error for review:

Assignment of Error

The trial court erred when it denied Haynesworth's motion to suppress.

{¶ 10} In the sole assignment of error, Haynesworth argues the police

officers did not have reasonable suspicion to make the initial investigatory stop.

{¶ 11} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court assumes the role of the trier of fact when presented with a motion to suppress. *Id.* Therefore, the trial court is in the best position to analyze the evidence and evaluate the credibility of the witnesses. *Id.* Accordingly, an appellate court must defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*

{¶ 12} However, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. *State v. Hill*, 8th Dist. Cuyahoga Nos. 83762 and 83775, 2005-Ohio-3155, ¶ 12.

{¶ 13} Preliminarily, as previously noted, in denying Haynesworth's motion to suppress, the trial court did not provide any findings of fact or any conclusions of law. Additionally, there is no transcript because of defense counsel's waiver of a hearing.

{¶ 14} Crim.R. 12(F) provides that "'where factual issues are involved in determining a motion, the court shall state its essential findings on the record.'" However, it is well settled in Ohio that in order to invoke the court's duty to issue findings of fact, the defendant must specifically request the essential findings. *Cleveland v. Cunningham*, 8th Dist. Cuyahoga No. 105403, 2018-Ohio-844, quoting *State v. Robinson*, 8th Dist. Cuyahoga No. 90731, 2008-Ohio-5580, ¶ 29;

*State v. Martin*, 8th Dist. Cuyahoga No. 89030, 2007-Ohio-6062, ¶ 13, citing *State v. Brown*, 64 Ohio St.3d 476, 481, 597 N.E.2d 97 (1992); *Bryan v. Knapp*, 21 Ohio St.3d 64, 65, 488 N.E.2d 142 (1986).

{¶ 15} In the instant case, after the trial court denied the motion to suppress, defense counsel filed a motion for essential findings, which counsel later withdrew. As a result of defense counsel withdrawing the motion for essential findings, there was no request. Thus, the trial court has no duty to issue findings of fact, when there is no record of the defendant's request. *Robinson* at ¶ 30.

{¶ 16} While it would have been better practice to have a hearing on the motion, for defense counsel to not have withdrawn the motion for essential findings, and the parties to submit the recording of the anonymous 911 call, we have reviewed the record as we are required to do. Our review includes the jointly stipulated exhibit No. 1 (pages 3 and 4 of the police report) and exhibit No. 2 (the police body camera videos) that the trial considered in ruling on the motion.

{¶ 17} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio State Constitution protect against unreasonable governmental searches and seizures. *State v. Callan*, 8th Dist. Cuyahoga No. 95310, 2011-Ohio-2279, ¶ 15. Warrantless searches and seizures are considered per se unreasonable, unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 18} The state contends the Fourth Amendment was not implicated because the officers' encounter with Haynesworth was consensual.

**{¶ 19}** One scenario that does not trigger Fourth Amendment protection is a citizen's consensual encounter with the police. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A consensual encounter occurs when the police approach a person in a public place, engage the person in conversation, and the person remains free to not answer or walk away. *State v. Jones*, 188 Ohio App.3d 628, 636, 936 N.E.2d 529 (10th Dist. 2010), citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed. 2d 229 (1983). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶ 20}** In the instant case, despite the state's claim that this was a casual and consensual encounter, our review indicates otherwise. The body camera videos reveal the patrol car approaching from the opposite direction as Haynesworth and Jones were walking along Detroit Avenue. The patrol car stops suddenly, almost riding upon the sidewalk. Haynesworth and Jones immediately stopped and the officers quickly exited the vehicle. Officer Perhacs authoritatively states: "Where you guys live at? * * * Where you headed to now? * * * What you guys doing coming down to Grace? * * * We got complaints that you guys were trying door handles on Grace."

**{¶ 21}** Haynesworth and Jones appear surprised by the encounter, with Haynesworth immediately stating: "Get the f**k no, that's crazy!" and Jones stating:

"[o]h no, no, never do nothing like that!" Both men adamantly denied trying the door handles of cars, but Officer Perhacs in a conclusory tone stated: "[g]uess what, that is why I am stopping you — why would they call and say that" and then demanded proof of their identities.

{¶ 22} There are various "[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). *See also* dissent in *State v. Forrester*, 8th Dist. Cuyahoga No. 101084, 2015- Ohio-98.

{¶ 23} Here, in light of Officer Perhacs's commanding tone, it does not appear that Haynesworth and Jones felt they could have declined to engage in the interaction and proceed on their way to their intended destination. Haynesworth and Jones were effectively seized and the encounter as revealed on the body camera videos was neither casual nor consensual. Indeed, the videos depict Haynesworth and Jones immediately stopping as the patrol car abruptly stopped in the opposite direction of traffic, and the officers quickly exiting the vehicle. The officers took their identification cards and did not return them until dispatch completed a background check on LEADS.

{¶ 24} The state argues in the alternative, that the stop was permissible because the officers had reasonable suspicion based on the anonymous 911 call.

{¶ 25} Another exception to the Fourth Amendment warrant requirement is an investigative stop, or a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity. *Id.* at ¶ 21-22.

{¶ 26} When determining whether an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus, *cert. denied*, 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252 (1988).

{¶ 27} In the instant case, the officers' decision to stop Haynesworth and Jones was not based on any observation of their own, but based solely on an anonymous 911 call, which is not contained in the record. An audio recording of the anonymous 911 call, as well as information about the caller, is critical for the review of the motion to suppress.

{¶ 28} Ohio courts have recognized three categories of informants: (1) citizen informants; (2) known informants, those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507. "[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity" to justify an investigative stop. *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). (Citation

omitted.) "This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for [an investigative] stop." *Id.* A stop is lawful if the facts relayed in the tip are "sufficiently corroborated to furnish reasonable suspicion that [the defendant] was engaged in criminal activity." *Id.* at 331.

{¶ 29} In the instant case, the anonymous tip did not provide the officers with information upon which they could test the caller's veracity. Much to the contrary. Exhibit No. 1, pages three and four of the police report, indicated that Officer McNeely checked the vehicles parked on the street of Grace Avenues and none appeared to have been tampered with or entered.[1] Officer McNeely's assessment also undermines the anonymous caller's report of men walking in the middle of the street, yet able to try the door handles of cars parked on the sides of the street.

{¶ 30} In *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), which we find instructive, an anonymous caller reported to the Miami-Dade Police Department that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Officers went to the bus stop and saw three black males, one of whom was wearing a plaid shirt. Other than the tip, the officers had no reason to suspect any of the three men of illegal conduct. The officers did not see a firearm or observe any unusual movements. One of the officers frisked J.L. and seized a gun from his pocket. J.L., who was almost 16 at the time, was charged

---

[1] Pages three and four are the only pages from the six-page police report contained in the record.

under state law with carrying a concealed firearm without a license and possessing a firearm while under the age of 18. The trial court granted his motion to suppress the gun as the fruit of an unlawful search. The intermediate appellate court reversed, but the Supreme Court of Florida quashed that decision and held the search invalid under the Fourth Amendment. *Id.* at syllabus.

{¶ 31} The United States Supreme Court in affirming the Florida Supreme Court, held that an anonymous tip that a person is carrying a gun is not, without more, sufficient to justify a police officer's stop and frisk of that person. The Court stated:

> Florida contends that the tip was reliable because its description of the suspect's visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop. Brief for Petitioner 20-21. The United States as amicus curiae makes a similar argument, proposing that a stop and frisk should be permitted "when (1) an anonymous tip provides a description of a particular person at a particular location illegally carrying a concealed firearm, (2) police promptly verify the pertinent details of the tip except the existence of the firearm, and (3) there are no factors that cast doubt on the reliability of the tip . . . ." Brief for United States 16. These contentions misapprehend the reliability needed for a tip to justify a Terry stop.

*Id.* at 271.

{¶ 32} Here, unlike *Florida v. J.L.*, where the state contended that the tip was reliable because it accurately described J.L.'s visible attributes, the anonymous caller did not even provide a description of the two men. The caller did not indicate the race of the two men; did not give an approximate age of the men; did not describe their physical attributes or their clothing; and did not indicate that one of the men

was carrying a book bag.[2]   The anonymous caller only said "two men."

{¶ 33} As a result, the only information the officers had when they stopped Haynesworth and Jones, albeit walking on a different street, was the bare bones report of two men walking down the middle of Grace Avenue trying car doors.   If the United States Supreme Court found an anonymous call describing a person's visible attributes of race, clothing, plus location, insufficient to justify an investigatory stop, then an anonymous call, which provided much less, cannot be sufficient to justify the present stop.

{¶ 34} The state cites *Navarette v. California*, 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), for the proposition that an anonymous 911 call may be sufficiently reliable for an investigatory stop.  However, *Navarette* is distinguishable from the facts in this case.   *Navarette* involved an anonymous eyewitness that claimed a truck had just run the caller off the road and continued driving.  The caller specifically described the make, model, and color of the truck; the license plate number; what she witnessed the truck do to her and its direction of travel.[3]  The anonymous caller in this case did not provide any details regarding the suspects other than "two men" walking down Grace Avenue.   The facts in this case are more aligned with the facts in *Florida v. J.L.*

{¶ 35} In *State v. Whitsette*, 8th Dist. Cuyahoga No. 92566, 2009-Ohio-

---

[2] The body camera video reveals that Haynesworth was carrying a bookbag.
[3] The use of the 911 system for the reliability of the call was only one factor the Court considered.

4373, which involved a fact pattern centering on an anonymous call, this court affirmed the trial court's decision to grant the defendant's motion to suppress because "the caller-informant failed to provide more specific details that the officers could corroborate for veracity[.]" *Id.* at ¶ 14, quoting *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254. We further noted, "[t]he anonymous call concerning [the defendant] provided no predictive information and, therefore, left the police without means to test the informant's knowledge or credibility." *Id.*

{¶ 36} Here, like the scenario in *Whitsette*, when the officers stopped Haynesworth and Jones, approximately two minutes after their department received the anonymous call, the men were simply out walking along the sidewalk on Detroit Avenue, on a summer evening in the city of Lakewood. The record does not contain any further information of criminal or suspicious behavior to warrant an investigatory stop. *State v. Williams*, 8th Dist. Cuyahoga No. 100311, 2014-Ohio-1728, citing *State v. Porter*, 8th Dist. Cuyahoga No. 86577, 2006-Ohio-4585.

{¶ 37} Nothing about this innocent activity of walking down the street would indicate that these were the two men that were the subjects of the anonymous 911 call that did not provide a description of the two men's visible attributes. Thus, at the time the officers stopped Haynesworth and Jones, we find there were insufficient surrounding circumstances to provide the officers with reasonable suspicion of criminal activity.

{¶ 38} While this appeal was pending, *State v. Hairston*, Slip Opinion No. 2019-Ohio-1622, was released. In *Hairston*, as two Columbus police officers were

responding to a radio call one night, they heard the sound of nearby gunshots. They immediately drove a short distance to the area where the shots seemed to be coming from and, with guns drawn, detained the only person in the area. A pat-down of the man revealed a handgun. Defense counsel filed a motion to suppress.

{¶ 39} The trial court stated it was a close call, but denied the motion to suppress. On appeal, the court held that the stop violated the Fourth Amendment and concluded that the trial court should have granted the motion to suppress the handgun and other evidence obtained during the stop. The Ohio Supreme Court found no violation of the Fourth Amendment.

{¶ 40} Although at first blush, *Hairston* appears similar to the instant case, because in both instances the officers stopped the first individuals they saw, *Hairston* is easily distinguishable from the instant case.

{¶ 41} In *Hairston*, in concluding the officers had a reasonable suspicion to stop Hairston, the court stated:

> Officer Moore personally heard the sound of gunshots - the gunshots were not faint and sounded close-by. This is not a case in which the officers relied on a radio dispatch or other secondhand information about shots being fired, *In re D.W.*, 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114, ¶ 32 (2d Dist.), but one in which they heard and immediately reacted to the sound of nearby gunfire.

2019-Ohio-1622, at ¶ 11.

{¶ 42} Here, unlike *Hairston*, the officers relied solely on a radio dispatch regarding an anonymous tip of two men walking down the middle of Grace Avenue trying door handles. Also, unlike *Hairston*, where the responding officers personally heard shots being fired nearby, there was no personal firsthand

observation. In addition, unlike *Hairston*, the officers were not immediately reacting to personally hearing the sound of gunfire nearby or personally observing activities that taken together rose to the level of reasonable suspicion.

{¶ 43} We are not discounting that Haynesworth was carrying a concealed weapon, and we fully appreciate the threat police officers face each day patrolling our streets, but the Fourth Amendment does not permit officers to stop, seize, or search any person without corroborating information that the person in question is presently involved in criminal activity.

{¶ 44} Based on our independent review of the record and the aforementioned exhibits, we find that at the time the officers observed Haynesworth and Jones walking on Detroit Avenue, the officers did not possess a reasonable and articulable suspicion of criminal activity, before initiating a *Terry* stop. As a result, the trial court erred in denying Haynesworth's motion to suppress.

{¶ 45} Accordingly, the sole assignment of error is sustained.

{¶ 46} Judgment is reversed; conviction vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR