The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith*, 163 Ohio App.3d 567, 2005-Ohio-5204.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040750.

Decided Sept. 30, 2005.

568

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Phillip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Scott Rubenstein, for appellant.

---

MARK P. PAINTER, Judge.

{¶ 1} Courts must be wary of anonymous tips. They could easily result from ulterior motives. That is why they must be corroborated to a greater degree than some other tips to law enforcement.

{¶ 2} Defendant-appellant Dwayne Smith challenges the trial court's denial of his motion to suppress. He argues that the police lacked credible evidence to corroborate an anonymous tip. The tip led to an investigatory stop of his vehicle and the discovery of cocaine through a canine sniff.

{¶ 3} Because the tip contained neither predictive information nor means to test the informant's credibility, we hold that the tip was unreliable and did not create the reasonable suspicion needed to stop Smith's vehicle. And corroboration, while attempted, did not rise to the necessary level. Thus the cocaine found in the car and evidence later found during a search of 3025 Theresa Street were obtained in violation of Smith's Fourth Amendment rights. We reverse the convictions that ensued from the trial court's denial of the motion to suppress.

## I. A Tip that Appeared to Be "Just What the Dr. Ordered"

{¶ 4} On June 27, 2004, Cincinnati Police District Three received an anonymous tip through the Crime–Stoppers program. The tip identified Dwayne Smith, of 3025 Theresa Street, Apartment No. 2, as a person who dealt in crack cocaine. The tipster also stated that Smith carried a gun, drove a black Cadillac, and kept the cocaine in a Dr. Pepper can in the glove compartment. But the tip did not provide any information about past drug transactions or predict any future deals.

{¶ 5} The police began to investigate Smith, found his mug shot, and checked his criminal record. Although there were no previous drug-related offenses, there was a mug shot because Smith had been convicted of involuntary manslaughter in 1992. The police found the Cadillac, checked the license, and obtained addresses for Smith. Although Smith's car was registered at a Losantiville Avenue address, the utility and telephone bills at the Theresa Street address were listed in Smith's name. It was later discovered that the lease for the Theresa Street apartment was in the name of Smith's sister, Latoyia. And she testified that Smith did not live there, although her boyfriend, another black male, did live at that address.

{¶ 6} The police believed that the tip was reliable enough to proceed with the investigation. Between the time of the tip and Smith's arrest, the police conducted surveillance to determine whether the black Cadillac was present at 3025 Theresa Street. Officer Michael Reynolds believed that he saw the Cadillac at that address six times during the 32–day investigation, but he never saw Smith parking the car. As Smith was incarcerated in the Hamilton County Justice Center (because of a misdemeanor) for 26 days of the 32–day period, it obviously was difficult for Officer Reynolds to corroborate whether Smith lived at 3025 Theresa Street. During this time, the black Cadillac was being used by Smith's sister at the Theresa Street address.

{¶ 7} Nonetheless, the police used a "source of information" (confidential informant) to allegedly arrange a purchase of cocaine from Smith for July 29, 2004. This was to take place at a location on Ferguson Road. We say "allegedly" because the record is sparse. Officer Reynolds testified that he had listened in on a cellular-phone conversation—but then an objection was made and sustained—and the narrative moved on without being fleshed out. Thus the record does not reflect any details of this conversation—nothing in the record tells us (1) who was on the phone, (2) what number was called, (3) how anyone knew it was Smith on the line, (4) when and where on Ferguson Road the transaction was to occur, (5) what drug was to be sold or bought, and (6) what quantity of drug was to be transferred. The information might well have been available, but it did not find its way into the record. And we are limited by the evidence in the record.

{¶ 8} On the day the drug deal was supposed to occur, a Hamilton County Sheriff's helicopter observed an African–American male leave the Theresa Street address and drive away in a black Cadillac towards Ferguson Road. But the transaction—which would have caught Smith red-handed—never occurred. Because the police were unable to get their informant to the designated meeting spot on time, a police sergeant ordered two officers to pull Smith over on an investigatory stop. The officers stopped Smith at the intersection of Glenway

Avenue and Guerley Road, approximately two and a half miles from the Theresa Street apartment. Neither the officers on the ground nor the ones in the helicopter observed Smith commit any traffic or criminal violations. And no one knew whether it was actually Smith in the car.

{¶ 9} The officers pulled Smith over and asked him to step out onto the sidewalk. Because of the warning that Smith carried a gun, the officers frisked him. There were no drugs or weapons on Smith, and he refused to consent to a search of his vehicle.

{¶ 10} The officers decided to call a drug canine to the scene. After 15 to 20 minutes, Officer John Mendosa arrived with his drug-sniffing dog, Caesar. Caesar walked around the car and alerted on the driver's and passenger's doors by scratching. Officer Mendosa opened the passenger door and Caesar entered the car and alerted to the glove compartment. When Officer Mendosa opened the glove compartment, Caesar grabbed a Dr. Pepper can with his mouth. Officer Mendosa then took the can away and noticed that the can had a false top. Upon removal of the top, crack cocaine was found inside.

{¶ 11} After the police found the crack cocaine in the Dr. Pepper can, a search of Smith's wallet yielded a handwritten receipt for the rent for 3025 Theresa Street. But the receipt was in the name of Latoyia Smith. The police nevertheless applied for a search warrant to search the 3025 Theresa Street apartment. Upon execution of the warrant, the officers found approximately 95 grams of crack cocaine hidden in a VCR case, another quantity of 10 to 25 grams of crack cocaine hidden in a jewelry box, and a quantity of marijuana. The police further found three weapons on the premises, two .45s and one Derringer.

## II. Standard of Review

{¶ 12} Appellate review of a suppression ruling involves mixed questions of law and fact.[1] When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence.[2] An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence.[3] But the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard.[4]

---

1. See *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

2. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583.

3. *Burnside*, supra, at ¶ 8.

4. Id., citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

### III.  Anonymous Tips

{¶ 13} The Ohio Supreme Court has recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant.[5]  A tip from an anonymous informant can give rise to a reasonable suspicion of criminal activity.[6]  But standing alone, an anonymous tip is generally insufficient to support reasonable suspicion because it lacks the necessary "indicia of reliability."[7]  "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, * * * 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'"[8]  Consequently, anonymous tips require corroboration that establishes "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop."[9]

{¶ 14} In the present case, the first assignment of error questions whether the Crime–Stoppers anonymous tip was sufficiently corroborated to provide reasonable suspicion.  If there was enough corroboration to create reasonable suspicion, then the police could have properly made the investigatory stop.[10]

{¶ 15} In *Alabama v. White*, the police received an anonymous tip asserting that a woman was carrying cocaine in a brown attaché case and predicting that she would leave an apartment building at a certain time, get into a car matching a particular description, and drive to a named hotel to make a drug deal.[11]  The United States Supreme Court held that this tip, standing alone, would not have justified a *Terry* stop.[12]  Only after police observation demonstrated that the informant had accurately predicted White's movements did it become reasonable

---

5.  See *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 300, 720 N.E.2d 507.

6.  See *Alabama v. White* (1990), 496 U.S. 325, 327, 110 S.Ct. 2412, 110 L.Ed.2d 301.

7.  Id. at 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.

8.  *Florida v. J.L.* (2000), 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254, citing *Adams v. Williams* (1972), 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612, and quoting *White*, 496 U.S. at 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.

9.  Id., citing *White*, 496 U.S. at 327, 110 S.Ct. 2412, 110 L.Ed.2d 301.

10.  *White*, 496 U.S. at 332, 110 S.Ct. 2412, 110 L.Ed.2d 301.

11.  Id. at 327, 110 S.Ct. 2412, 110 L.Ed.2d 301.

12.  Id. at 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.

to believe that the tipster had accurate information.[13] The court stressed that anonymous tips cannot just state "easily obtained facts and conditions existing at the time of the tip."[14] Instead the court held that the critical factor is the ability to predict the suspect's future behavior.[15] Considering that the route driven by White involved several turns, the court concluded that the destination was sufficiently corroborated to allow the police to pull her over before reaching the hotel.[16]

{¶ 16} The court further refined the law of anonymous tips in *Florida v. J.L.*, in which the police received information that a black male wearing a plaid shirt, standing at a particular bus stop, was carrying a gun.[17] When the police arrived at the bus stop, there were three African–American males, one wearing a plaid shirt.[18] Apart from the tip, there was no reason to suspect any of the three of criminal conduct. But one of the officers approached and frisked J.L., who did have a gun in his pocket.[19] The court held that an anonymous tip that provided no predictive information and left the police with no means to test the informant's credibility was unreliable and did not justify the stop and frisk.[20] That the tip turned out to be correct did not mean that there was any reasonable suspicion to believe that these three men had engaged in unlawful conduct in the first place.

{¶ 17} For an anonymous tip to provide police with reasonable suspicion to justify a stop and frisk, the tip must not only contain detailed facts, but also predict future activities or provide means to test the informant's credibility.

{¶ 18} In the present case, the anonymous tip simply did not rise to the level of reliability to allow the police to gain the reasonable suspicion to stop Smith's car. The tip provided facts that most neighbors could have conveyed. The tip provided a name, an address, a car, and the location of drugs in the car. While the tip turned out to be correct about the cocaine in the Dr. Pepper can in the glove compartment, the tip provided no means for the police to test that detail.

---

13. Id.

14. Id.

15. Id.

16. Id. at 331, 110 S.Ct. 2412, 110 L.Ed.2d 301.

17. *Florida v. J.L.*, 529 U.S. at 268, 120 S.Ct. 1375, 146 L.Ed.2d 254.

18. Id.

19. Id.

20. Id. at 271, 120 S.Ct. 1375, 146 L.Ed.2d 254.

The tip also failed to provide any predictive information about any future drug transactions.

{¶ 19} Instead, the future drug transaction was set up through another informant, who made a call from a cellular phone. From the record, the details of this drug transaction are ambiguous at best. Officer Reynolds testified only that he listened in while the informant set up the drug buy. No details were ever produced as to how Officer Reynolds knew that the informant was talking to Smith, what the exact date, time, and location of the drug deal would be, or what drugs were to be involved.

{¶ 20} The one detail Officer Reynolds provided to the court—that the drug deal was at a Ferguson Road location—was vague. Officer Reynolds did not even specify where on Ferguson Road the buy was to take place. And the police stopped Smith before they could corroborate that he was en route to that location. Unlike the *White* case where the defendant made a series of turns towards a particular location and was pulled over on the street where the alleged drug transaction was to take place, Smith's driving did not indicate any predicted behavior, nor did Smith even reach the street where the transaction was supposedly to take place.

{¶ 21} The state maintains that Smith was pulled over as he was driving toward Ferguson Road. But the facts did not demonstrate that Smith was driving anywhere but up Glenway Avenue into Price Hill towards Western Hills. When Smith left the Theresa Street address, he was within three blocks of Glenway Avenue. Under the state's analysis, by simply driving on the main thoroughfare located near Theresa Street, Smith necessarily was driving to a Ferguson Road location. If the police had their informant in place to make the buy or allowed Smith to proceed closer to the intended location, the predictive-information element could have been met. As they stood, however, the anonymous tip and the subsequent informant did not provide the necessary predictive information to increase the reliability of the tip.

{¶ 22} By detaining Smith before any predicted behavior could be ascertained, and by failing to introduce any detailed information by the confidential informant, the police were left with bare facts similar to the ones the United States Supreme Court in *Florida v. J.L.* held to be insufficient to allow for an investigatory stop. As we have previously mentioned, there might have been sufficient information for the stop and detention—but it is not in the record.

## IV. The Cocaine Is Out

{¶ 23} The United States Supreme Court announced the exclusionary rule in *Weeks v. United States,* holding that evidence obtained in violation of an accused's Fourth Amendment rights could not be used in a federal criminal

prosecution against him.[21]  The exclusionary rule of the Fourth Amendment was extended to the states through the Fourteenth Amendment in *Mapp v. Ohio*.[22] The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality, or "fruit of the poisonous tree." [23]

{¶ 24} In this case, when the officers seized Smith without reasonable suspicion and subjected the car to a canine sniff, the cocaine found in the Dr. Pepper can necessarily became evidence obtained in violation of Smith's Fourth Amendment rights.  The trial court should have granted the motion to suppress as to the primary evidence obtained as a result of the illegal search, the cocaine. In addition, Officer Reynolds testified that the warrant was predicated on the corroboration of the anonymous tip of the crack cocaine found in the Dr. Pepper can and the rent receipt for 3025 Theresa Street found in Smith's wallet during the search incident to arrest.

{¶ 25} "Q.  Could you tell us what kind of information your investigation gathered that led you to ask for a warrant at that address?"

{¶ 26} "A.  There was—once the stop was initiated, there was a quantity of crack cocaine that was found in a Dr. Pepper can inside the glove box, as described in our anonymous tip to the district.  We had Officer Kowalski actually watch the defendant get into his car in the parking lot at 3025 Theresa Street. Also, a search incident to arrest of Mr. Smith for the crack cocaine in his glove box, there as a handwritten receipt for the rent at 3025 Theresa Street, made out in the name of Latoyia Smith, for $700."

{¶ 27} Because the search warrant was based on evidence discovered through an illegal seizure, the later-discovered evidence found at 3025 Theresa Avenue is fruit of the poisonous tree and is now also excluded.

## V.  Alleged Ineffective Assistance of Counsel

{¶ 28} Smith's second assignment of error concerning ineffective assistance of counsel need not be addressed.  Because the suppression motion should have been successful, and now will be as a result of this decision, Smith has not been prejudiced by any alleged failings of his trial counsel.

---

21.  *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

22.  (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

23.  See *Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

{¶ 29} We reverse the trial court's judgment and remand this cause for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

Doan, P.J., and Hendon, J., concur.