[Cite as *State v. Tidwell*, 2019-Ohio-4493.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-180512 |
| | | C-180511 |
| Plaintiff-Appellant, | : | TRIAL NOS. C-17TRC-44406-A |
| | | C-17TRC-44406-B |
| vs. | : | |
| SHERRY TIDWELL, | : | *O P I N I O N.* |
| Defendant-Appellee. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  November 1, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*The Law Officers of Steven R. Adams* and *Tad K. Brittingham,* for Defendant-Appellee.

**ZAYAS, Presiding Judge.**

{¶1}   The state of Ohio appeals from the judgment of the Hamilton County Municipal Court granting defendant-appellee Sherry Tidwell's motion to suppress evidence gathered from a traffic stop.  For the following reasons, we affirm the trial court's judgment.

## Facts and Procedural History

{¶2}   On November 11, 2017, Ohio State Trooper Sergeant Jacques Illanz was investigating a traffic accident that occurred on Fields-Ertel Road in Symmes Township.  Sergeant Illanz had the vehicles involved in the accident pull into a nearby Speedway gas station parking lot while he wrote his crash report.  While writing the report in his police vehicle, a Speedway customer called out to Illanz from the doorway of the gas station convenience store to investigate another vehicle in the parking lot.  Illanz said that the customer yelled to him, directing his attention to the vehicle in question: "hey, you need to stop that vehicle.  That lady is drunk."

{¶3}   Sergeant Illanz testified that he watched the vehicle back out of a parking space very slowly and saw a blank stare on the driver's face. He did not observe a traffic violation.  Illanz then motioned for the driver to stop.  When the driver did not stop, he walked and stood in front of the vehicle.  The vehicle stopped, and Sergeant Illanz began talking to the driver, Sherry Tidwell.  Illanz asked Tidwell to roll down her window, turn off the vehicle and hand him her keys, which she did. Illanz testified that Tidwell's eyes were bloodshot and glassy and her speech was slow and slurred, and that he smelled alcohol in the car. When questioned, Tidwell admitted to Illanz that she was out buying alcohol and heading home, and that she had been at a party watching a college football game.

**{¶4}** Sergeant Illanz stated that he asked Tidwell for her driver's license, which she retrieved. Illanz described her movements as slow and exaggerated. At about that time, Deputy Randy Reynolds of the Hamilton County Sheriff's Office arrived and took over the investigation while Illanz went inside the convenience store and spoke to the clerk. The customer who had called out to Sergeant Illanz had since left the scene and was thus unavailable for questioning, and remains unknown. Deputy Reynolds conducted field-sobriety tests on Tidwell and concluded that she was under the influence of drugs or alcohol and placed her under arrest. Subsequent testing revealed a blood-alcohol concentration of .213. Tidwell was charged with operating a vehicle while under the influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(h).

**{¶5}** Tidwell filed a motion to suppress evidence gathered from the stop. Following a hearing, the trial court granted Tidwell's motion to suppress. The trial court found that there was no erratic driving, and that the anonymous tip provided by the Speedway customer was unreliable and could not have justified Sergeant Illanz's initial contact with Tidwell, much less an investigatory stop of her vehicle. The state now appeals, asserting one assignment of error.

## Legal Analysis

**{¶6}** In its sole assignment of error, the state argues that the trial court erred in granting Tidwell's motion to suppress. The state claims that the totality of the circumstances showed that Sergeant Illanz engaged Tidwell in a consensual encounter for the purposes of inquiry based on a reliable citizen-informant tip, and that the encounter developed into a valid *Terry* stop based on reasonable and articulable suspicion that Tidwell was driving under the influence of drugs or alcohol.

{¶7} Our review of a ruling on a motion to suppress involves a mixed question of law and fact. *State v. Schneider*, 1st Dist. Hamilton No. C-120786, 2013-Ohio-4789, ¶ 10, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. "If competent, credible evidence supports the trial court's findings of fact, then the appellate court must accept those findings as true. The appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal quotations omitted.) *Id.*

{¶8} Tidwell's motion to suppress challenged the lawfulness of her arrest for OVI in light of the constitutional limits on unreasonable searches and seizures. The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect against unreasonable seizures of the person. "The primary purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers in order to 'safeguard the privacy and security of individuals against arbitrary [governmental] invasions.' " *State v. Carlson*, 102 Ohio App.3d 585, 592, 657 N.E.2d 591 (9th Dist.1995), quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Under this standard of reasonableness, the legitimacy of an intrusion "is judged by balancing the impact of the intrusion upon the individual's privacy rights against the government's legitimate interest in protecting its citizens from crime." *Carlson* at 592.

{¶9} However, it is well established that Fourth Amendment protections are not implicated in every situation where the police have contact with an individual. *See State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2d Dist.1995), citing *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *State v. Hall*, 2016-Ohio-783, 60 N.E.3d 675, ¶ 14-16 (1st Dist.). "The United States Supreme

4

Court has created three categories of police-citizen contact to identify the situations where these guarantees are implicated." *Taylor* at 747, citing *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982). These categories include: (1) a consensual encounter, (2) an investigative detention, or *Terry* stop, and (3) a seizure that constitutes an arrest. *Taylor* at 747-750.

{¶10} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747, citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). An officer's request to examine an individual's identification does not make an encounter nonconsensual. *Florida v. Rodriguez*, 469 U.S. 1, 4-6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984). Fourth Amendment guarantees are not implicated "unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Taylor* at 748, citing *Mendenhall* at 554; *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the other two categories. *Taylor* at 748.

{¶11} In the case before us, Illanz walked in front of Tidwell's moving vehicle after Tidwell did not stop when Illanz simply motioned for her to stop. Illanz testified that he was in uniform when he walked in front of the vehicle, ordered Tidwell to stop, roll down her window, turn off the car and hand him her keys. By Illanz's own testimony, Tidwell was not free to leave or terminate the encounter. Accordingly, Illanz's initial approach of Tidwell's vehicle was not consensual, and was therefore either an investigatory detention or an arrest.

{¶12} The second type of contact is a *Terry* stop or an investigatory detention, which is more intrusive than a consensual encounter but less intrusive than a formal custodial arrest. *Taylor*, 106 Ohio App.3d at 748, 667 N.E.2d 60; *Terry* at 27. An investigatory detention must be limited in duration and purpose, and can only last as long as it takes a police officer to confirm or to dispel his suspicions. *Taylor* at 748, citing *Terry* at 30. "A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *Taylor* at 748, citing *Mendenhall* at 553; *Terry* at 16, 19. In *Mendenhall*, the Supreme Court listed factors that might indicate a seizure, including the use of language or tone of voice indicating that compliance with the officer's request might be compelled, approaching the citizen in a nonpublic place, and blocking the citizen's path. *Mendenhall* at 554.

{¶13} A police officer may perform a constitutionally-permissible investigatory detention as long as the police officer has a reasonable, articulable suspicion of criminal activity. *Terry*, 392 U.S. at 21 88 S.Ct. 1868, 20 L.Ed.2d 889. "Reasonable suspicion was vaguely defined [in *Terry*] to mean something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Osborne*, 2d Dist. Montgomery No. CA 15151, 1995 WL 737913, *4 (Dec. 13, 1995), citing *Terry* at 27.

{¶14} Although *Terry* specifically refers to a police officer's own observation of conduct giving rise to reasonable suspicion, subsequent Ohio and federal case law makes clear that a stop may be based on information received from an informant or through an anonymous tip. *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Maumee v. Weisner*, 87 Ohio St.3d 295, 303, 720 N.E.2d 507

6

(1999). Information received via an informant or anonymous tipster may provide reasonable suspicion for a *Terry* stop where it is supported by sufficient indicia of reliability or corroborated by independent police work. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Adams* at 147-148. However, "there is no bright-line test for determining whether an informant's tip is sufficiently reliable to furnish a basis for an investigatory stop." *State v. English*, 85 Ohio App.3d 471, 620 N.E.2d 125 (2d Dist.1993). Whether the informant is known or anonymous, each case must be evaluated under the totality of the circumstances. *Maumee* at 304.

{¶15} "In the case of a citizen-informant who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable." (Internal citations omitted.) *State v. Shepherd*, 122 Ohio App.3d 358, 366, 701 N.E.2d 778 (2d Dist.1997). Conversely, anonymous tips require corroboration that establishes sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. *State v. Smith*, 163 Ohio App.3d 567, 2005-Ohio-5204, 839 N.E.2d 451, ¶ 13 (1st Dist.). An anonymous tip must be "reliable in its assertion of illegality, not just in its tendency to identify a determinate person," if it is to provide reasonable suspicion for a *Terry* stop. *Id.* at ¶ 16, citing *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Further, "the tip must not only contain detailed facts, but also predict future activities or provide means to test the informant's credibility." *Smith* at ¶ 17; *see Alabama v. White*, 496 U.S. at 327, 110 S.Ct. 2412, 110 L.Ed.2d 301. For example, in *State v. Smith*, this court held that an anonymous tip which provided the name and address of a suspected drug dealer was insufficient to support reasonable suspicion because it did not provide information about any future drug transactions. *Smith* at

7

¶ 18. The rationale for this standard is to prevent anyone with enough knowledge about a given person to formulate a tip which makes her the target of a prank, or uses law enforcement to seek revenge over a grudge against her. *See, e.g., White* at 333 (Stevens, J., dissenting).

{¶16} In this case, we must determine whether the unknown Speedway customer was a reliable source of information and, if so, whether the information that he provided to Sergeant Illanz was sufficient to constitute reasonable suspicion that Tidwell was involved in criminal activity—i.e., operating her vehicle while under the influence of alcohol.

{¶17} As stated above, the unknown customer left the convenience store between the time he called out to Sergeant Illanz and Illanz's subsequent investigation inside the store. Thus, the customer remained unknown and unnamed. The tip itself provided no predictive information and Illanz was left with no means to test the unknown customer's credibility. Specifically, the tip did not contain any detail. The customer did not say, for example, that Tidwell was falling down drunk, or consuming alcohol inside the Speedway, or nearly hit something while driving to the Speedway. Apart from the tip, there was no reason to suspect Tidwell of any particular criminal conduct.

{¶18} Upon receiving the tip, Illanz observed Tidwell pulling out of a parking spot very slowly. The trial court entered a factual finding that this observation did not equate to erratic driving. Erratic driving can sometimes provide a reasonable basis to investigate the cause of such driving even though it might not rise to the level of a commission of the traffic offense. *See State v. Bahen*, 2016-Ohio-7012, 76 N.E.3d 438, ¶ 23 (10th Dist.). Under our standard of review of a motion to suppress, we must accept the trial court's findings of fact if they are supported by competent,

credible evidence. *Schneider*, 1st Dist. Hamilton No. C-120786, 2013-Ohio-4789, at ¶ 10. Here, we find competent, credible evidence in the record to support the trial court's finding that slowly backing up a Hummer H3 in a gas station parking lot that is situated along a very busy road did not constitute erratic driving. This evidence includes Illanz's testimony that backing up very slowly in a parking lot would be safer than backing up very quickly.

{¶19} Consequently, under the totality of the circumstances, the information provided by the unknown Speedway customer and the independent observations of Sergeant Illanz were not sufficient to constitute reasonable suspicion for a *Terry* stop.

### Conclusion

{¶20} In light of the foregoing, the state's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.