[Cite as *Steele v. Cincinnati*, 2019-Ohio-4853.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

MAIKEL STEELE, Administrator of the    :    APPEAL NO. C-180593
Estate of O'Bryan Raphael Spikes,        TRIAL NO. A-1706067

     Plaintiff-Appellant,        :        *O P I N I O N.*

   vs.

CITY OF CINCINNATI,        :

BRIAN A. BRAZILE,

DAVID DOZIER,        :

JOEHONNY N. REESE,        :

   and

DIONDRE L. WINSTEAD,        :

     Defendants-Appellees,

   and        :

CAMEO CINCINNATI, LLC,        :

JULIAN RODGERS,

JRODG GROUP, LLC,        :

   and        :

KELLOGG GROUP, LLC,

     Defendants.        :

Civil Appeal From:    Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 27, 2019

*The Law Firm of Curt C. Hartman* and *Curt C. Hartman*, and *Finney Law Firm*, *Christopher P. Finney* and *Bradley M. Gibson*, for Plaintiff-Appellant,

*Paula Boggs Muething*, City Solicitor, *Emily Smart Woerner*, Chief Counsel, and *Mark R. Manning*, Senior Assistant City Solicitor, and *Hardin, Lazarus & Lewis, LLC*, and *Kimberly A. Rutowski*, for Defendants-Appellees.

**MYERS, Presiding Judge.**

{¶1} In this appeal, we are asked to determine whether defendants-appellees the city of Cincinnati and Cincinnati Police Officers Brian Brazile, David Dozier, Joehonny Reese, and Diondre Winstead ("the officers"), are entitled to judgment on the pleadings on plaintiff-appellant Maikel Steele's claims against them relating to a shooting that took place at a Cincinnati nightclub where the officers were working a security detail as private duty officers outside the nightclub.

{¶2} Because the trial court appropriately determined that the city was entitled to a grant of immunity because the officers were engaging in a governmental function when working the security detail outside the nightclub, and that the officers had no duty under the facts alleged in the complaint to prevent weapons from being brought into the nightclub, we hold that the trial court did not err in granting the motion for judgment on the pleadings.

### 1. Factual and Procedural Background

{¶3} O'Bryan Raphael Spikes was present at Cameo Nightclub on March 25, 2017, when a gunfight erupted in the nightclub. Spikes, an innocent bystander, was hit by a stray bullet and died from his resulting injuries. The officers had been working a security detail as private duty officers outside Cameo Nightclub when the shooting took place.

{¶4} Steele, as the administrator of Spikes's estate, filed suit against the city and the officers, as well as defendants Julian Rodgers, Cameo Cincinnati, LLC, ("Cameo") JRODG Group, LLC, ("JRODG") and Kellogg Group, LLC, ("Kellogg"). Cameo did business under the trade name Cameo Nightclub, and was operated by

JRODG. Julian Rodgers was the statutory agent for, and a member of, both Cameo and JRODG. Kellogg owned the building out of which JRODG operated Cameo.

{¶5} Steele's complaint alleged that Cameo, as part of its security protocol, required all patrons of the nightclub to enter through one entrance, where they were screened for weapons. It further alleged that Rodgers had established a policy, pattern and practice of permitting patrons to bypass the security entrance and enter the nightclub without being screened for weapons. Patrons with knowledge of this "security bypass" could avail themselves of it by paying an additional cover charge and entering the club through an alternate entrance. According to the complaint, Spikes's death resulted from patrons engaging in a gunfight after entering the club with weapons through this security bypass.

{¶6} With respect to the officers, the complaint alleged that they had worked the security detail at Cameo Nightclub on multiple occasions, were familiar with the security protocols, and knew or should have known of the security bypass; that they breached their duty to protect the nightclub patrons from foreseeable harm by turning a blind eye to the security bypass; that their actions were done "either with a malicious purpose, in bad faith, or in a wanton or reckless manner" because incidents of violence were foreseeable when both weapons and alcohol are present and because similar acts of violence had previously occurred at the nightclub; and that, as a result of the officers' conduct, weapons were allowed inside the nightclub, resulting in Spikes's death.

{¶7} Regarding the city, the complaint alleged that it was responsible for the negligent acts of its employees, as the officers were acting under the direction of the city and within the scope of their employment in a proprietary function while working the security detail. It further alleged that the officers negligently performed

4

their duty to ensure that weapons were not brought into the nightclub, which led to Spikes's death.

{¶8} Steele attached to the complaint a copy of both the "Outside Employment Work Permit" that was signed by the city and the "Acknowledgement by the Secondary Employer" form that was signed by Julian Rodgers concerning the officers' employment as private duty security officers for Cameo Nightclub. Both forms provided that the officers would perform the following duties: "exterior security and police visibility."

{¶9} Kellogg filed a cross-claim against all defendants, arguing that they had breached the duty of care owed to plaintiff, and that any liability that could be found in favor of Steele was solely the responsibility of the remaining defendants.

{¶10} The city and the officers filed a Civ.R. 12(C) motion for judgment on the pleadings. They argued that the city was entitled to immunity on Steele's claims and on Kellogg's cross-claim because the officers were performing a governmental function when working the security detail at Cameo Nightclub. And they argued that the officers were immune from liability because they had no duty to act to prevent the harm suffered. They additionally argued that the officers were entitled to immunity because they had not acted with malicious purpose, in bad faith, or in a wanton and reckless manner.

{¶11} Steele and Kellogg opposed the motion for judgment on the pleadings, arguing that the city was not entitled to immunity because the officers were engaged in a proprietary function when working the security detail. They additionally argued that the officers had a duty to prevent the harm suffered and that they were not entitled to immunity because the complaint sufficiently alleged that they had acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶12} The trial court granted the motion for judgment on the pleadings. It found that the city was immune from liability because the officers were engaged in a governmental function when working the security detail. With respect to the officers, it found that they had no duty to prevent weapons from being brought into the nightclub, and that the complaint did not sufficiently assert that the officers had acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶13} Steele now appeals, arguing in a single assignment of error that the trial court erred in granting the motion for judgment on the pleadings.[1]

### 2. *Standard of Review*

{¶14} We review de novo a trial court's ruling on a Civ.R. 12(C) motion for judgment on the pleadings. *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 15 (1st Dist.). We must accept all material allegations in the nonmoving party's complaint as true and must construe all reasonable inferences in that party's favor. *Id.* The motion should only be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling her to relief. *Id.*

{¶15} A trial court may grant a motion for judgment on the pleadings on the basis of an affirmative defense such as immunity where the complaint bears conclusive evidence that the action is barred by the defense. *Bucey v. Carlisle*, 1st Dist. Hamilton No. C-090252, 2010-Ohio-2262, ¶ 9. So "unless the pleadings 'obviously or conclusively establish[ ] the affirmative defense,' a court may not grant a motion for judgment on the pleadings." *Harris Farms, LLC v. Madison Twp.*

---

[1] Steele dismissed all remaining claims that had been asserted against Cameo, Julian Rodgers, JRODG and Kellogg. Kellogg likewise dismissed its cross-claim against the remaining defendants.

*Trustees*, 4th Dist. Scioto No. 17CA3817, 2018-Ohio-4123, ¶ 18, quoting *Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 21 (10th Dist.).

### 3. The City

{¶16} We first consider Steele's argument that the trial court erred in granting the motion for judgment on the pleadings with respect to the city.

{¶17} R.C. Chapter 2744 establishes a three-tiered analysis for determining whether a political subdivision, such as the city, is entitled to immunity. *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 8 (1st Dist.). First, R.C. 2744.02(A)(1) provides a political subdivision with a general grant of immunity for damages in a civil action resulting from an act or omission of the political subdivision or employee in connection with a governmental or proprietary function. Second, R.C. 2744.02(B) sets forth various exceptions that, if applicable, remove the initial grant of immunity. And third, if an exception has been applied to remove immunity, R.C. 2744.03 contains various defenses that can reinstate immunity.

{¶18} The parties do not dispute that the city was entitled to an initial grant of immunity under R.C. 2744.02(A)(1). But Steele contends that the exception set forth in R.C. 2744.02(B)(2) applies to remove that immunity. R.C. 2744.02(B)(2) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Steele argues that the officers were engaging in a proprietary function when working the security detail, and that they negligently performed their duty to ensure that weapons were not brought into the nightclub. The city argues that the act of working the security detail was a governmental function.

{¶19} R.C. 2744.01(C)(1) provides that a governmental function is:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement; (b) A function that is for the common good of all citizens of the state; [or] (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities *that are not engaged in or not customarily engaged in by nongovernmental persons*; and that is not specified in division (G)(2) of this section as a proprietary function.

(Emphasis added.) The statute lists specific examples of governmental functions, including the provision of police services and the power to preserve the peace. *See* R.C. 2744.01(C)(2)(a) and (b). In contrast, a proprietary function is one that is not described as a governmental function in R.C. 2744.01(C)(1)(a) or (b) or specified as a governmental function in (C)(2), and "is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities *that are customarily engaged in by nongovernmental persons.*" (Emphasis added.) R.C. 2744.01(G)(1).

{¶20} Relying on *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 733 N.E.2d 1141 (2000), Steele argues that when determining whether an action is a governmental or proprietary function, the specific act or omission at issue must be considered, not just the general nature of the function. In *Greene*, the court held that a county agricultural society was engaging in a proprietary function when conducting a livestock competition at a county fair. *Id.* at paragraph two of the syllabus. The court noted that in reaching such a determination "the issue here is not whether holding a county fair is a governmental function; rather, it is the more specific question of whether conducting the hog show at the county fair and conducting the

investigation into the allegations of irregularity * * * are governmental functions." *Id.* at 560.

{**¶21**} In this case, the specific service that the officers had been hired to provide when working the security detail is listed on the Outside Employment Work Permit and the form titled Acknowledgement by the Secondary Employer, both of which Steele attached to the complaint. These forms indicate that the officers were hired to provide "exterior security and police visibility." They were not hired to provide any indoor security or to engage in the screening process for patrons entering the nightclub. Police visibility is not an activity customarily engaged in by nongovernmental persons. *See* R.C. 2744.01(C)(1)(c). In fact, working as police officers can only be engaged in by governmental persons. And the provision of police services is specifically listed as an example of a governmental function. *See* R.C. 2744.01(C)(2)(a).

{**¶22**} We hold that the officers were engaging in a governmental function when working the security detail outside Cameo Nightclub. *See Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 2017-Ohio-380, 83 N.E.3d 354, ¶ 24 (8th Dist.) (holding that an off-duty police officer working a special duty at a casino was performing a government function); *see also Cooper v. Tommy's Pizza*, 10th Dist. Franklin No. 09AP-1078, 2010-Ohio-2978, ¶ 8 (holding that a police officer working a special duty was performing a governmental function). Because no exception applies to remove the city's immunity, the trial court did not err in determining that the city was entitled to judgment on the pleadings.

### 4. The Officers

{¶23} We next consider whether the trial court erred in granting the motion for judgment on the pleadings with respect to the officers. The trial court held that the officers were entitled to judgment on the pleadings because they had no duty to prevent weapons from being brought into the nightclub. It also found that the officers were immune from liability, as the complaint did not sufficiently assert that they had acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Steele challenges both of these determinations. We need not reach the immunity argument, as we agree with the trial court's determination that the officers had no duty to prevent weapons from being brought into the nightclub under the facts alleged in the complaint.

{¶24} Steele alleged in the complaint that the officers, having previously worked security details at Cameo Nightclub, were familiar with the security protocols and knew or should have known of the security bypass, but that they turned a blind eye to it. The complaint further alleged that the officers had a duty to protect the nightclub's patrons from foreseeable harm, that incidents of violence in the nightclub were foreseeable when both weapons and alcohol were present, and that the officers breached this duty by turning a blind eye to the security bypass and allowing weapons into the nightclub.

{¶25} Taking all allegations in the complaint as true, we find that the officers had no duty to prevent weapons from being brought into the nightclub under the facts alleged in the complaint. The officers were hired to provide exterior security and police visibility. As police officers, they had a duty to take action if they saw a crime being committed. But the complaint contains no allegations that the officers failed to do so or that they failed to properly provide the services specified in the

Outside Employment Work Permit. Rather, the complaint alleges that the officers turned a blind eye and allowed weapons to be brought into the nightclub via the security bypass. Even taking this as true, the officers had no duty to screen or search patrons prior to their entrance. In fact, they had no authority under Ohio law to do so. An officer cannot randomly stop and frisk a person in the absence of a reasonable, articulable suspicion that the person was engaging in, or about to engage in, criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Tidwell*, 1st Dist. Hamilton No. C-180512, 2019-Ohio-4493, ¶ 13.

{¶26} Because the officers had no duty under the facts alleged in the complaint to prevent weapons from being brought into the nightclub when providing external security, the complaint failed to establish a violation of duty by the officers, and the trial court did not err in granting their motion for judgment on the pleadings.

{¶27} Steele's assignment of error is accordingly overruled.

### 5. Conclusion

{¶28} Because the city was immune from liability as the officers were engaged in a governmental function when working a security detail outside Cameo Nightclub, and because the complaint failed to establish a violation of duty by the officers, the trial court did not err in granting the motion for judgment on the pleadings, and we affirm its judgment.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.**, concur.

11

Please note:

The court has recorded its own entry on the date of the release of this opinion.